NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

**ESCAMBIA RIVER ELECTRIC COOP-ERATIVE, INC., Respondent.**

No. 83–3177.

United States Court of Appeals,
Eleventh Circuit.

June 4, 1984.

Elliott Moore, Deputy Assoc. Gen. Counsel, L. Pat Wynns, N.L.R.B., Washington, D.C., for petitioner.

Reginald J. Bell, Benjamin Culp, Atlanta, Ga., for respondent.

Before RONEY and HENDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

HENDERSON, Circuit Judge:

The National Labor Relations Board ("Board") petitions for enforcement of an order directed against Escambia River Electric Cooperative, Inc. ("Cooperative") for violations of sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3) ("Act").

William E. Patrick, Jr., a former employee of the Cooperative, filed an unfair labor practices charge with the Board, alleging that he had been discharged in violation of the Act. The complaint was referred to an Administrative Law Judge ("ALJ"), who found that the Cooperative engaged in certain unfair labor practices during a representative election, in violation of section 8(a)(1) of the Act. The ALJ further found that Patrick was not a managerial employee within the meaning of the Act and that the Cooperative contravened the provisions of sections 8(a)(3) and (1) of the Act by discharging him because of his union activities.[1] The Board subsequently accepted and affirmed the ALJ's findings of fact and conclusions of law.

The Board required the Cooperative to cease its unfair labor practices and ordered the Cooperative to reinstate Patrick to his former or a substantially equal position, to reimburse him for lost wages suffered as a result of his dismissal, to expunge any reference to the discharge from his employment records, and to post an appropriate notice.

■ The sole issue before us is whether substantial evidence on the record as a whole supports the Board's finding that Patrick was not a managerial employee. At oral argument, the Cooperative conceded that there was substantial evidence to sustain the ALJ's and, hence, the Board's finding that Patrick was discharged because of his union activity. Therefore, a finding that Patrick was not a managerial employee would mandate enforcement of the Board's order with respect to his discharge. The Cooperative does not contest the Board's other findings of unfair labor practices. Consequently, those findings are entitled to summary enforcement. *See NLRB v. Lummus Industries, Inc.,* 679 F.2d 229, 233 (11th Cir.1982).

■ Whether the Board correctly determined that Patrick was a nonmanagerial employee is a mixed question of law and fact. There is no doubt that managerial employees are excluded from the protections of the Act. *NLRB v. Yeshiva University,* 444 U.S. 672, 674, 100 S.Ct. 856, 858, 63 L.Ed.2d 115, 120 (1980). Nor is there any factual dispute regarding the specifics of Patrick's employment duties. Our task is confined to applying the law to the facts found to determine whether the Board properly characterized Patrick's position with the Cooperative.

Managerial employees are defined as those who "formulate and effectuate management policies by expressing and making operative the decisions of their employer." *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 288, 94 S.Ct. 1757, 1768, 40 L.Ed.2d 134, 150 (1974), *quoting Palace Laundry Dry Cleaning,* 75 NLRB 320, 323 n. 4 (1947). Generally speaking, an employee attains managerial status "only if he represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy." *NLRB v. Yeshiva University,* 444 U.S. at 683, 100 S.Ct. at 862, 63 L.Ed.2d at 126; *Walla Walla Union-Bulletin, Inc. v. NLRB,* 631 F.2d 609, 613 (9th Cir.1980). As the Supreme Court observed in *NLRB v. Bell Aerospace Co.,* 416 U.S. at 290 n.

---

**1.** Managerial employees are excluded from the protections of the Act; nonmanagerial employees are fully covered. *See NLRB v. Yeshiva University,* 444 U.S. 672, 674, 100 S.Ct. 856, 858, 63 L.Ed.2d 115, 120 (1980).

19, 94 S.Ct. at 1769, n. 19, 40 L.Ed.2d at 151 n. 19, "the question whether particular employees are 'managerial' must be answered in terms of the employee['s] actual job responsibilities, authority and relationship to management." Under the Board standard, cited with approval in *NLRB v. Bell Aerospace Co., id.*:

> [t]he determination of an employee's managerial status depends upon the extent of his discretion, although even the authority to exercise considerable discretion does not render an employee managerial where his decision must conform to the employer's established policy.

*Eastern Camera & Photo Corp.*, 140 NLRB 569 (1963).

■ The Board's decision rests on two conclusions. First, it found that Patrick's responsibilities were essentially routine and relatively unimportant. Second, it noted that Patrick made no discretionary decisions independent of the Cooperative's established policies. After a review of the evidence, we concur with the findings and conclusions of the ALJ and the Board's decision.

Patrick was hired by the Cooperative to serve as "Energy Advisor," a position later retitled "Director of Member Services." Primary among his duties was the development and implementation of an energy conservation program required by the state and federal governments. A great part of his time was spent conducting energy audits. He visited customers' houses and compiled information for inclusion on a standard Cooperative form. He then submitted the form to a computer company which analyzed the information and provided the Cooperative with a printout containing recommendations for energy efficient measures. Patrick delivered the printout to the customer and answered questions with respect to the recommendations. He also furnished the customer with a list of recommended contractors in the area.

Patrick also recruited instructors to present safety programs to the line crew; made arrangements for energy conservation workshops, at which he assisted the manager in showing slide presentations prepared by the Cooperative; compiled articles for the Cooperative's magazine; prepared news releases to notify the public of preplanned power outages; secured a location for the Cooperative's annual meeting; investigated customer complaints; and assisted the crews by operating the radio and telephones during bad weather.

Unlike other nonmanagerial employees of the Cooperative, Patrick had a title, was salaried, and was furnished his own office. He planned his own work schedule and had the use of a company car during his working hours. He also attended, on a voluntary basis, staff meetings and seminars.

The Cooperative asserts that each of Patrick's duties bear the indicia of management status. In context, however, each of his duties more closely resembled a role existing within clearly defined policy parameters and conferring little, if any, discretionary authority.

The Cooperative emphasizes that Patrick developed and implemented the energy conservation program. Such an emphasis pales, however, in light of the fact that his "development" activities primarily involved following guidelines established by the state and federal governments. Patrick's "energy audit" duties were relatively routine. In most instances, Patrick essentially helped the customers complete standardized forms and interpret evaluations.[2] Patrick's appearances before civic groups and school boards were equally routine. He merely arranged schedules for energy programs and assisted Cooperative managers in making a prepared slide presentation.

Patrick edited information disseminated to the public through its monthly magazine and occasional news releases. This function, though, only entailed the assembly of articles from other sources. The news releases were prepared with the assistance of

---

**2.** The Cooperative responds that standardized forms were not used in all audits. Such a minor deviation does not elevate his duties beyond a "routine" level.

the office manager and were simply notices of preplanned power outages.

The Cooperative makes much of the fact that Patrick was responsible for investigating customer complaints. In handling such complaints, Patrick visited with the customer to determine billing errors. If any errors were found, Patrick's task was only to refer the conflict to the office manager for resolution.

Patrick's other duties were equally circumspect in scope and did not involve any substantial discretionary action. Nothing in the record suggests that responsibilities such as securing safety instructors, making arrangements for the site of the annual meeting and assisting operations crews during bad weather were tantamount to formulating and effectuating Cooperative policies.

It is true that Patrick enjoyed certain amenities and privileges not accorded other employees. These accommodations are not determinative of a managerial position where, as here, his exercise of discretion and judgment was circumscribed by established policy.

Patrick occupied a unique role with the Cooperative, and his duties differed somewhat from those of other nonsupervisory employees. He exercised some responsibility on a day-to-day basis. But viewing Patrick's duties as a whole, we find that he actually exercised limited discretion within a relatively small area of the Cooperative's activities. He neither formulated nor effectively controlled the programs and business of his employer. Thus, we agree with the Board's characterization of Patrick's duties as nonmanagerial in nature.

ENFORCED.