NORANDA ALUMINUM,
INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 84–1405.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1984.
Decided Dec. 27, 1984.

Sara J. Herrin, St. Louis, Mo., for petitioner.

Lynne Deitch, Washington, D.C., N.L.R.B., for respondent.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HENLEY, Senior Circuit Judge.

Noranda Aluminum, Inc. petitions for review of an order of the National Labor Relations Board while the Board seeks enforcement of the order. The Board ordered Noranda to bargain with the United Steelworkers of America, AFL–CIO–CLC (the Union) as the exclusive bargaining representative of a unit composed of four occupational health nurses employed at Noranda's New Madrid, Missouri facility. Noranda's primary contention on appeal is that the four nurses are managerial employees and are thus not covered by the National Labor Relations Act (the Act). *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). We enforce the Board's order.

The Union petitioned the NLRB to represent the nurses and, following a hearing, the Regional Director ordered an election in a unit comprised of all occupational health nurses at the New Madrid plant. The nurses voted three to one in favor of the Union. The Board denied Noranda's request for review of the Regional Director's decision and certified the Union as the exclusive bargaining representative of the unit. Noranda subsequently refused the Union's request to bargain. The Union then filed an unfair labor practices charge and the Board found that Noranda had refused to bargain with the Union in violation of 29 U.S.C. § 158(a)(5). The Board ordered Noranda to bargain with the Union and it is this order which is now before the court.

Managerial employees are not covered by the National Labor Relations Act. *Bell Aerospace Co.*, 416 U.S. at 289, 94 S.Ct. at 1769. The Supreme Court held that such employees are impliedly excluded from the Act's coverage since their interests are closely identified with those of management. *Id.* at 285–87, 94 S.Ct. at 1767–68. Managerial employees are defined as those who "formulate and effectuate management policies by expressing and making operative the decisions of their employer." *Id.* at 288, 94 S.Ct. at 1768; *Iowa Elec. Light & Power Co. v. NLRB*, 717 F.2d 433, 434 (8th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1677, 80 L.Ed.2d 153 (1984). The question whether a certain group of employees is managerial is answered on a case-by-case basis by examining their "actual job responsibilities, authority, and relationship to management." *Bell Aerospace Co.*, 416 U.S. at 290 n. 19, 94 S.Ct. at 1769 n. 19. An employee is managerial "only if he represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy." *Iowa Elec. Light & Power Co.*, 717 F.2d at 434 (quoting *NLRB v. Yeshiva University*, 444 U.S. 672, 683, 100 S.Ct. 856, 862, 63 L.Ed.2d 115 (1980)).

We believe that the Board acted permissibly in concluding that the employees are not managerial. The nurses' primary responsibilities are treating employees' injuries and illnesses, administering routine physical examinations to applicants and employees, and maintaining logs and records. They work under the direction of a nursing services supervisor and a part-time physician,[1] who leaves standing orders

---

1. The nursing staff provides care twenty-four hours a day, seven days a week. The four

for the treatment of common ailments. They have no independent authority to purchase medical supplies or equipment, but must instead have requisitions approved by the supervisor. In one instance, Noranda management did solicit their recommendations prior to purchasing an EKG machine and a breathalyzer, but the nurses did not make the final decision to purchase the equipment. There was also one occasion in which one of the nurses suggested a procedure to be utilized in determining when an employee should be disciplined when his or her conduct suggested intoxication. The nurse's suggestion was subsequently adopted by the company. However, this alone does not make the nurses managerial employees since "they do not have the authority to implement ... changes without approval." *Iowa Elec. Light & Power Co.*, 717 F.2d at 436.

■ It does appear that the nurses have some authority to reject an applicant who, in the nurses' judgment, does not meet Noranda's health standards. They also determine whether an employees' injuries and illnesses are work-related and whether an employee is well enough to return to work. An employee who is kept off work by a nurse is entitled to receive medical leave payments. However, if the nurses determine that the employees are unable to perform their jobs, they are usually kept off work only until the company physician can examine them. Such duties notwithstanding, we believe that the Board could properly find that the nurses' discretion is limited to applying their professional medical skills to the job criteria established by the company and that such activities are incidental to their professional responsibilities. An employee is not managerial if her deci-

sionmaking is limited to the routine discharge of professional responsibilities. "Only if an employee's activities fall outside the scope of the duties routinely performed by similarly situated professionals will he be found aligned with management." *Yeshiva University*, 444 U.S. at 690, 100 S.Ct. at 866.

We also note that the nurses do not participate in setting Noranda's labor relations policy. They attend industrial relations department meetings only when the nursing services supervisor is unavailable and this happens infrequently.[2]

Noranda asserts that the nurses' self-organization would create an impermissible conflict of interest between their job responsibilities and their loyalty to the Union. It points to the nurses' responsibilities in regard to determining sick leave and in administering the breathalyzer. Noranda states that these decisions have sometimes resulted in the filing of grievances which in some instances have required arbitration proceedings to resolve. Apparently, the nurses are sometimes required to testify at these proceedings. It also points out that the nurses have access to employee personnel and medical records and argues that the nurses might be pressured to disclose this information to the Union.

■ While there is some potential for a conflict of interest, we do not believe this possibility should suffice to exclude the employees from coverage under the Act. Here, just as in *Iowa Elec. Light & Power Co., supra,* and *Betchel, Inc.*, 225 NLRB 197 (1976), the employees with the alleged conflict are carefully supervised. Therefore, if a question should arise about improper action on the part of one of the

nurses are assigned to eight hour shifts on a rotating basis. The nursing services supervisor, who is also a registered nurse, works from 8:00 a.m. to 4:30 p.m., Monday through Friday. The company physician is on duty one day a week. The parties stipulated that the nursing services supervisor is not covered by the Act. *See* 29 U.S.C. § 152(3).

**2.** Noranda contends that the Regional Director's decision in an earlier case involving Noranda's

nursing department requires us to reverse the case at bar. In 1976 the Regional Director found that the nurse employed at the time was a managerial employee. However, the Board could properly conclude that the situation now is distinguishable. It appears that many of the duties performed by the one nurse in 1976 have been retained by her in her capacity as supervisor and that these management-type responsibilities are not performed by the other four nurses.

nurses, Noranda "has the means to correct the situation." *Betchel, Inc.*, 225 NLRB at 198; *Iowa Elec. Light & Power Co.*, 717 F.2d at 436. Furthermore, there is no evidence to suggest that the nurses would actually engage in such misconduct. We can agree with the Board that Noranda's speculation should not be used to deny the nurses their collective bargaining rights. "[E]mployees whose decisionmaking is limited to the routine discharge of professional duties in projects to which they have been assigned cannot be excluded from coverage even if union membership arguably may involve some divided loyalty." *Yeshiva University*, 444 U.S. at 690, 100 S.Ct. at 866.

Finally, Noranda contends that there is no rational basis for the Board's finding that the nurses constitute an appropriate bargaining unit. It argues that the proper unit should include all professional employees at the plant. However, there is substantial evidence to support the Board's finding that the nurses, as a unit, "share a close and substantial community of interest among themselves which is separate and distinct from that of other employees." *Watonwan Memorial Hospital, Inc. v. NLRB*, 711 F.2d 848, 850 (8th Cir.1983). The Board need only choose an appropriate unit, not the most appropriate one. *Id.; Kansas City Terminal Elevator Co. v. NLRB*, 697 F.2d 269, 270 (8th Cir.1983) (per curiam).

In sum, while we might not have reached the same conclusions as the Board did were we deciding the matter de novo, we believe the Board's findings are rationally based. In close cases, it is the Board's responsibility to determine where the line should be drawn between managerial and non-managerial employees. Our role is limited to ascertaining whether its decision is supported by substantial evidence. *Iowa Elec. Light & Power Co.*, 717 F.2d at 437. "[W]e accord great respect to the expertise of the Board when its conclusions are rationally based on articulated facts and consistent with the Act." *Yeshiva University*,

444 U.S. at 691, 100 S.Ct. at 867. We enforce the Board's order.