Geoffrey J. WALDAU, Petitioner,

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

No. 93–3152.

United States Court of Appeals, Federal Circuit.

March 16, 1994.

Geoffrey J. Waldau, argued pro se.

Eric D. Flores, Atty., Merit Systems Protection Bd., Washington, DC, argued for respondent. With him on the brief were Mary L. Jennings, Deputy Gen. Counsel and Martha B. Schneider, Asst. Gen. Counsel. Of counsel was Sharon Y. Eubanks and David M. Cohen, Attys., Dept. of Justice, Washington, DC.

Before ARCHER, MICHEL and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Geoffrey J. Waldau petitions for review of the decision of the Merit Systems Protection Board (MSPB or Board), Docket No. DC0752910393–B–1, 56 M.S.P.R. 39, dismissing his appeal from the removal decision of the United States Postal Service (USPS) for lack of jurisdiction. We vacate the MSPB's decision on Waldau's status as a management employee, reverse the decision not to consider his status as a confidential employee, and remand on both grounds.

## I

On February 12, 1991, the USPS issued its final decision effectuating petitioner's removal on several grounds, none of which is relevant to this appeal. Waldau, *pro se*, timely appealed this decision to the MSPB. On March 5, 1991, the Administrative Judge (AJ) assigned to the case informed Waldau via an Acknowledgement Order (Order) that he bore the initial burden of establishing Board jurisdiction over his appeal. Pertinent to the issues on appeal, the Order stated:

> If there is a question as to whether your appeal is ... within the Board's jurisdiction, this Order gives you the opportunity to submit evidence to establish ... jurisdiction. *If you further establish that there is a dispute as to facts which will affect [the AJ's] decision on the issue of ... jurisdiction, you are also entitled to a hearing....*

### JURISDICTION

> Because you are a [USPS] employee, the Board may not have jurisdiction to decide your appeal. You must 1) be a preference-eligible employee, a management *or* supervisory employee *or* an employee engaged in personnel work in other than a purely nonconfidential clerical capacity ... for the Board to exercise jurisdiction over your appeal. *See* 39 U.S.C. § 1005(a) and 5 U.S.C. § 2108.

> You have the burden of proving that the Board has jurisdiction over your appeal. Accordingly I ORDER you to file evidence and argument to prove that this action is within the Board's jurisdiction....

(emphasis added). Waldau initially responded with argument unhelpful to assessing the Board's jurisdiction over his appeal. In response to a USPS motion to dismiss, however, Waldau argued that he was a "management," or "managerial," employee and listed various functions of his position that he considered to be support for his contention. Nonetheless, the AJ issued an initial decision on April 19, 1991, dismissing his appeal for lack of jurisdiction.

Waldau timely petitioned the full Board for review of the initial decision on the grounds

that the AJ erred in dismissing his appeal for want of jurisdiction without holding a hearing on the issue. In his appeal, Waldau also argued that the agency had put the question of his status as an employee engaged in confidential personnel work ("confidential employee") into issue by its concession before the AJ that he was entrusted with much confidential information. Consequently, Waldau argued that he was entitled to a jurisdictional hearing on his status as both a management *and* a confidential employee. The USPS moved to strike Waldau's assertions as to his status as a confidential employee on the ground that *he* first raised the issue on appeal.

In its May 26, 1992, decision, the full Board ruled that

[a]n appellant is not required to prove Board jurisdiction to entitle him [sic] to a hearing; rather, he need only make a nonfrivolous allegation that the Board has jurisdiction over his appeal. *See, e.g., Alford v. Department of the Army,* 47 M.S.P.R. 271, 274 (1991); *Burgess v. Merit Systems Protection Board,* 758 F.2d 641, 642–43 (Fed.Cir.1985).

In light of Waldau's submitted evidence, the Board concluded that Waldau's "argument concerning jurisdiction was non-frivolous because it was based on more than mere conclusory allegations," and that the AJ erred in requiring Waldau to prove his status as a management employee, rather than requiring him merely to make a nonfrivolous allegation of jurisdiction. *Waldau v. United States Postal Serv.,* 54 M.S.P.R. 193, 194–195 (1992). Accordingly, the Board

remand[ed] this case to the [AJ] for a hearing and the issuance of a new initial decision. If the [AJ] finds that the Board has jurisdiction over the appellant's case, she should proceed to decide the merits of the ... appeal.

*Id.* at 195 (footnote omitted). Because of the remand order, the Board found it "unnecessary" both to decide whether it properly could consider Waldau's claim that he was also a confidential employee, or to rule on the government's motion to strike Waldau's assertions on that issue.

On remand, Waldau refined his initial claim in a prehearing submission, arguing that the Board had jurisdiction over his case because he was both a management employee and a confidential employee. The AJ, however, informed the parties during a prehearing telephonic conference that the jurisdictional hearing would be limited solely to whether Waldau qualified as a management employee. The AJ reasoned that this limitation was necessary because the question whether Waldau engaged in personnel work in other than a purely nonconfidential clerical capacity had not been raised, nor was it considered, before the AJ's initial dismissal, and "because the Board's order remanding the case [did] not appear to expand upon the issue decided in the initial decision." *Waldau v. United States Postal Serv.,* No. DC0752910393–B–1, slip op. at 1 (MSPB June 23, 1992) (conference summary).

After holding a limited hearing on the jurisdictional issue, the AJ concluded in her September 8, 1992, decision that Waldau had failed to demonstrate that he was indeed a managerial employee, and thus again dismissed the appeal for lack of jurisdiction. The AJ reasoned, in part, that "[t]he persuasiveness of [Waldau's] statements and testimony concerning these examples of [his] policy decision[making] was diminished by the fact that there was no showing that [he] had final signatory authority concerning any of the decisions." *Waldau v. United States Postal Serv.,* No. DC0752910393–B–1, slip op. at 3 (MSPB Sept. 8, 1992). The AJ further noted that "many of the policy decisions [Waldau] claimed to have made were actually issued over the signature of" a supervisor. *Id.* at 4. This initial decision became final when the full Board denied Waldau's petition for review on December 18, 1992. Waldau, again *pro se,* timely appealed to this court.

On appeal, Waldau reiterates factual details regarding each of his responsibilities and argues that these details demonstrate that he qualifies as a management employee and that therefore the Board has jurisdiction to hear the merits of his appeal. In particular, Waldau argues that he is entitled to status as a manager for two reasons: because his position is vested with the actual

authority to engage in managerial activity and because, even absent such authority, management's acceptance of his many policy recommendations demonstrates his alignment with management and his consequent status as a *de facto* manager. Waldau also asserts that the AJ committed legal error in deciding the jurisdictional issue, arguing that although he lacked "final signatory authority concerning any decisions," he nevertheless qualifies as a manager under National Labor Relations Board (NLRB) and Supreme Court precedent. Finally, Waldau argues that the Board erred in denying him a hearing on whether he qualifies as a confidential employee.

## II

Under the Postal Service Employees Appeal Rights Act, Pub.L. No. 100–90, 101 Stat. 673 (1987) (codified as amended at 39 U.S.C. § 1005(a)(4) (1988)), the MSPB lacks jurisdiction over any appeal from a personnel action taken against a non-preference-eligible USPS employee, *see* 5 U.S.C. §§ 7511(a)(1)(B)(ii), 2108(3) (1988 & Supp. III 1991), unless that person

> (I) is in the position of a supervisor or *a management employee* in the [USPS], *or is an employee of the [USPS] engaged in personnel work in other than a purely nonconfidential clerical capacity;* and

> (II) has completed 1 year of current continuous service in the same or similar positions.

39 U.S.C. § 1005(a)(4)(A)(ii) (emphasis added).

■ Under 5 U.S.C. § 7703(c) (1988), we review decisions of the Board, *inter alia,* to determine if they are "otherwise not in accordance with law." Whether jurisdiction exists is a question of law that we review *de novo. See, e.g., Dehne v. United States,* 970 F.2d 890, 892 (Fed.Cir.1992); *Muniz v. United States,* 972 F.2d 1304, 1309 (Fed.Cir.1992); *see also Speedco, Inc. v. Estes,* 853 F.2d 909, 911 (Fed.Cir.1988). Consequently, we review *de novo* the question whether the MSPB has jurisdiction to adjudicate a case. *See Cruz v. Department of Navy,* 934 F.2d 1240, 1243–44 (Fed.Cir.1991) (in banc). Applying our standard of review to this case, we address

whether the Board erred in determining that Waldau fails to qualify as a "management employee" within the meaning of section 1005(a)(4)(A), and therefore whether he has a right to appeal the adverse personnel action to the MSPB, by examining the general standards used by the Supreme Court and the NLRB in determining whether an employee qualifies as managerial.

## III

■ Sub-chapter 7(II) of Title 29 of the United States Code governs the NLRB's supervision of labor-management relations. For purposes of NLRB jurisdiction, the terms "employee" and "supervisor" are defined in detail in 29 U.S.C. § 152(3), (11) (1988), respectively. In contrast to "supervisory" employees, who are excluded (in part) from the National Labor Relations Act's (NLRA's) coverage, *see* 29 U.S.C. §§ 152(3), (11); 164(a) (1988), managerial employees are neither defined in, nor expressly excluded from coverage under, the NLRA. *See Walla Walla Union–Bulletin, Inc. v. National Labor Relations Bd.,* 631 F.2d 609, 612–13 (9th Cir.1980). Management employees, however, have been excluded therefrom by judicial decision. These decisions, from the NLRB and the Supreme Court, govern the MSPB's determination of its jurisdiction under 39 U.S.C. § 1005(a)(4)(A). *See McCandless v. Merit Sys. Protection Bd.,* 996 F.2d 1193, 1199 (Fed.Cir.1993); *Green v. United States Postal Serv.,* 41 M.S.P.R. 323, 326 (1989); *Benifield v. United States Postal Serv.,* 40 M.S.P.R. 50, 52–54 (1989); *see also National Labor Relations Bd. v. Bell Aerospace Co., Div. of Textron, Inc.,* 416 U.S. 267, 281–83, 283, 94 S.Ct. 1757, 1765–66, 1766, 40 L.Ed.2d 134 (1974) ("[O]ther employees, much higher in the managerial structure [than 'confidential employees,'] ... were ... regarded as so clearly outside [29 U.S.C. sub-ch. 7(II) ] that no specific exclusionary provision was thought necessary.").

NLRB and Supreme Court precedent establish that management employees are "those who 'formulate and effectuate management policies by expressing and making operative the decisions of their employer.'"

*Id.* at 288, 94 S.Ct. at 1768 (quoting *Palace Laundry Dry Cleaning,* 75 N.L.R.B. 320, 323 n. 4 (1947)). Whether particular employees are "managerial" is not controlled by the specific job title of the position held by the employee. Rather, the question must be answered "in terms of the employee['s] actual job responsibilities, authority, and relationship to management." *Bell Aerospace,* 416 U.S. at 290 n. 19, 94 S.Ct. at 1769 n. 19; *see International Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 396 n. 13, 106 S.Ct. 1904, 1915 n. 13, 90 L.Ed.2d 389 (1986). Furthermore, this question must be resolved on a case-by-case basis. *Noranda Aluminum, Inc. v. National Labor Relations Bd.,* 751 F.2d 268, 269 (8th Cir.1984).

■ The Supreme Court itself has more particularly laid out the framework for determining whether an employee qualifies as management:

> [N]ormally an employee may be [considered] managerial only if he represents management interests by *taking or recommending* discretionary actions that effectively control or implement employer policy.

*National Labor Relations Bd. v. Yeshiva Univ.,* 444 U.S. 672, 683, 100 S.Ct. 856, 862, 63 L.Ed.2d 115 (1980) (citations omitted) (emphasis added). In essence then, an employee can qualify as management under NLRB law by demonstrating either that he actually has authority to *take* discretionary actions—thus being a *de jure* manager—or that he *recommends* discretionary actions that are implemented by others possessing actual authority to control employer policy—thus being a *de facto* manager.

This distinction between formal or final actual authority to manage and the capacity "effectively to recommend such action" was subsequently noted, albeit in the context of determining "supervisor" status, in *National Labor Relations Bd. v. Res-Care, Inc.,* 705 F.2d 1461, 1467 (7th Cir.1983), which held on the facts of that case that a group of licensed nurses were not "supervisors" under the NLRA. *See Sutter Community Hosps. of Sacramento, Inc.,* 227 N.L.R.B. 181, 193 ((1976) ("The touchstone in a given case is whether or not a professional employee ei-

ther exercises the type of discretion indicative of managerial status or, having some responsibility for authorship, participates directly in the employer's policymaking process.") (*cited in People's Transp. Serv., Inc.,* 276 N.L.R.B. 169, 264 & n. 18 (1985)); *see also National Labor Relations Bd. v. Escambia River Elec. Coop., Inc.,* 733 F.2d 830, 832 (11th Cir.1984) (NLRB's decision rested on two distinct conclusions: employee made no discretionary decisions independent of established policy, and employee's responsibilities were relatively unimportant).

Though the precedent has established "no firm criteria for determining when an employee is ... aligned with management," *Walla Walla,* 631 F.2d at 613, at least one guideline is clear: that final signatory authority is not a necessary prerequisite to concluding that an employee qualifies as management, either as a matter of *de jure* or *de facto* status.

That final or binding signatory authority is not necessary for a demonstration of managerial status does not, however, establish that evidence of lack of such signatory authority is never relevant to the determination. Indeed, such evidence would weigh heavily against any argument that an employee qualifies as *de jure* management under the first prong of *Yeshiva University* because he allegedly has the requisite authority to take discretionary actions on behalf of management. As for an employee claiming that he is managerial simply because of his *de facto* authority, however, as evidenced by his effective recommendations concerning discretionary actions, the consideration of whether that employee has final signatory authority is irrelevant. In such circumstances, "the relevant consideration is effective recommendation or control rather than final authority." *Yeshiva Univ.,* 444 U.S. at 683 n. 17, 100 S.Ct. at 863 n. 17. When the issue for determination is an employee's *de facto* management status, any further consideration of the fact that he lacks final signatory authority is logically inappropriate, since recognition of his argument presupposes a lack of signatory authority. Furthermore, the caselaw demonstrates the irrelevance of an absence of actual decisional

authority when assessing whether an employee's recommendations align the employee with management.

In *University of Dubuque,* 289 N.L.R.B. 349 (1988), the NLRB faced the issue of whether faculty members at the University of Dubuque were "managerial" employees within the meaning of the NLRA and therefore were subject to exclusion from collective bargaining negotiations. In attempting to classify the faculty as non-managerial, the Union contended, *inter alia,* that the faculty had little input into the decisionmaking process at the University and that the faculty could not make effective policy recommendations because actual control lay not with the faculty, but instead with the University's administration; that the University's curriculum was controlled exclusively by the University's Board of Directors (UBOD) rather than by the faculty, as evidenced by the fact that the UBOD had eliminated certain academic departments contrary to the faculty's recommendations; that the University Dean had the authority to overrule faculty recommendations on hiring and the selection of department and division chairpersons; and that the UBOD effectively controlled terminations, sabbaticals, and budget matters. *Id.* at 351. In opposing the Union's position, the University noted that the UBOD had adopted various faculty recommendations on the promotion and tenure of faculty members and the renewal of contracts for probationary faculty, as well as on various budgetary concerns within guidelines set by the University Administrative Cabinet; and that the faculty's recommendations were effective in the sense that they were nearly always accepted by the UBOD. *Id.* at 351–52.

Although ultimate authority in certain of these areas resided with the UBOD or upper levels of management, who occasionally rejected faculty recommendations, it was clear to the NLRB that the faculty played a significant role in the operation of the University, such that they could be considered managerial employees. *Id.* at 352; *see also FHP, Inc.,* 274 N.L.R.B. 1141, 1142–43 (1985) (full-time staff physicians and dentists, in their capacity as committee members, effectively formulated and effectuated policies of their employer and therefore exercised managerial authority: "[W]here the committee's action takes the form of recommendations to department heads or management, ..., [an overwhelming majority of] the recommendations are regularly if not always followed." (interpreting *Yeshiva University* )).

In rejecting the Union's arguments and concluding that the faculty were "managerial," the NLRB compared the facts of the case to those of *Yeshiva University,* specifically noting that "although the [Supreme] Court found that the Yeshiva faculty's authority in academic matters was absolute, it expressly found absolute authority [not to be] a prerequisite for managerial authority." *University of Dubuque,* 289 N.L.R.B. at 353; *see Yeshiva Univ.,* 444 U.S. at 685 n. 21, 688 n. 27, 100 S.Ct. at 864 n. 21, 865 n. 27. The NLRB thus followed the Supreme Court's teachings in *Yeshiva University:*

> The statutory definition of "supervisor" expressly contemplates that those employees who "effectively ... recommend" the enumerated actions are to be excluded as supervisory. 29 U.S.C. § 152(11). Consistent with the concern for divided loyalty, the relevant consideration is effective recommendation or control rather than final authority. *That rationale applies with equal force to the managerial exclusion.*

444 U.S. at 683 n. 17, 100 S.Ct. at 863 n. 17 (emphasis added); *see also National Labor Relations Bd. v. Lewis Univ.,* 765 F.2d 616, 621–22 (7th Cir.1985).

Similar disregard for the absence of actual authority when assessing *de facto* management status has been expressed by the federal appellate courts and the NLRB in factual settings other than those concerning university faculties, and when addressing both the supervisory and managerial status of employees. *See, e.g., Iowa Elec. Light & Power Co. v. National Labor Relations Bd.,* 717 F.2d 433, 434–36 (8th Cir.1983) (nuclear power plant Quality Control inspectors) (relying upon *Yeshiva University*'s definition of management), *cert. denied,* 466 U.S. 903, 104 S.Ct. 1677, 80 L.Ed.2d 153 (1984); *Res–Care,* 705 F.2d at 1467 (licensed practical nurses) ("Nor, in light of the statutory words 'effectively to recommend such action,' is it impor-

tant that the ... nurses do not have formal or final authority to hire, fire, lay off, promote, reward, or discipline; ...."); *National Labor Relations Bd. v. Wilson–Crissman Cadillac, Inc.,* 659 F.2d 728, 730 (6th Cir. 1981) (car dealership employees) (relying upon *Yeshiva University*'s definition of management); *International Bhd. of Elec. Workers, Local Union 340,* 273 N.L.R.B. 428, 434 & n. 17 (1984) (electrical workers) (employee found to be supervisor within 29 U.S.C. § 152(11) even in absence of final authority: "Ultimate authority cannot be a prerequisite to supervisory ... status, since in every corporation ultimate authority is vested in the board of directors."); *Bentley Hedges Travel Serv., Inc.,* 263 N.L.R.B. 1408, 1412 & n. 3 (1982) (travel service employees) (rejecting argument that employee could not be managerial employee even though ultimate authority rested in stockholders of closely held corporation) (citing with approval *Yeshiva University); Montefiore Hosp. & Medical Ctr.,* 261 N.L.R.B. 569, 570 (1982) (physicians); *see Passavant Health Ctr.,* 284 N.L.R.B. 887, 893 (1987) (Dotson, Chrmn., dissenting) (nurses) (requiring nurses to have *de facto* final authority is incompatible with definition of supervisor in section 29 U.S.C. § 152(11)); *see also Yeshiva Univ.,* 444 U.S. at 685 n. 21, 100 S.Ct. at 864 n. 21 ("Ultimate authority ... has never been thought to be a prerequisite to ... managerial status.... since every corporation vests that power in its board of directors.").

In the present case, Waldau contends that the Board erred as a matter of law in counting against the evidence on his management status the fact that he lacked final signatory authority over any of the work he did, including his recommendations subsequently accepted by management. As we understand Waldau's contention, he asserts that the applicable precedent precludes any consideration of his lack of signatory authority. The government also does not distinguish between the matter of *de jure* authority to manage, based upon the authority actually vested in an employee to execute specified management tasks, and *de facto* authority to manage which may be based upon the manner in which management responds to management-related recommendations made by an employee not vested with *de jure* authority. To the government, the absence of actual authority, while not a prerequisite to establish managerial status, is relevant to any determination of that status.

We agree in part with both Waldau and the government. Final signatory authority "has never been ... a prerequisite ... to managerial status." *Yeshiva Univ.,* 444 U.S. at 685 n. 21, 100 S.Ct. at 864 n. 21. Therefore, though the absence of such power is indeed relevant to an employee's actual job authority, lack of such power cannot be used in assessing an employee's managerial status based on the employee's effective recommendations. Rather, if the evidence tends to indicate that the employee "represents management interests by ... recommending discretionary actions that effectively ... implement employer policy," *Yeshiva Univ.,* 444 U.S. at 683, 100 S.Ct. at 862, and sufficiently demonstrates the employee's alignment with management, then that employee's managerial status must be determined without consideration of evidence on the employee's lack of signatory authority. *See id.; University of Dubuque,* 289 N.L.R.B. at 353. *Compare Iowa Elec. Light & Power,* 717 F.2d at 436 (noting that "inspectors" make suggestions for changes but lack the authority to implement those changes without approval). We thus conclude that the Board erred in explicitly "[diminishing the] persuasiveness of [Waldau's] statements and testimony concerning the[ ] examples of [his] policy decision[making]," *Waldau,* slip op. at 3 (MSPB Sept. 8, 1992), by considering that Waldau lacked signatory authority over any of the decisions on which he allegedly made the policy recommendations that were rendered "effective" by management's acceptance thereof.

Although this record contains evidence to support the factual findings on which the legal conclusion that Waldau was not a management employee is based, we on appeal are unable to determine the extent to which Waldau's lack of signatory authority affected the Board's ultimate determination. On this record, we therefore cannot conclude that the Board here would have reached the

same decision had no consideration been given to Waldau's lack of final signatory authority, thereby rendering any error harmless. *See Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB*, 975 F.2d 807, 814 (Fed.Cir.1992) (conclusion not in accordance with law required remand from Court of International Trade for further consideration of statutorily mandated factors); *Tomas v. Rubin*, 935 F.2d 1555, 1555 (9th Cir.1991) (in light of articulation of new legal standard not previously applied by agency, remand was appropriate); *Ommaya v. National Insts. of Health*, 726 F.2d 827, 830–31 (D.C.Cir.1984) (finding error not harmless where Board applied wrong legal test); *see also Webster v. Department of Army*, 911 F.2d 679, 691 n. 1 (Fed.Cir.1990) (Nies, C.J., dissenting) (application of incorrect legal standard requiring different factual inquiries than those otherwise necessary requires remand (citing *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1565 (Fed.Cir.), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987))), *cert. denied*, —— U.S. ——, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991); *cf. Killip v. Office of Personnel Management*, 991 F.2d 1564, 1568–69 (Fed.Cir.1993) (remand unnecessary when upholding Board's decision does not depend upon factual determinations not previously made by the Board); *Greenwood v. Hattori Seiko Co.*, 900 F.2d 238, 241 n. 3 (Fed.Cir.1990) (remand necessary where lower tribunal ignored part of evidence of record in drawing conclusion). We therefore vacate the Board's decision concerning Waldau's management status and remand for application of the correct legal standard to the facts of this case in light of this decision.

The Board on remand should note that whether Waldau's recommendations *could* be rejected by actual management is irrelevant to the ultimate issue of whether he qualifies as a management employee under section 1005(a)(4)(A) because of power effectively to recommend. Instead, the focus should be on the history of USPS' actual reactions to Waldau's recommendations, *see University of Dubuque*, 289 N.L.R.B. at 352, 353; *FHP, Inc.*, 274 N.L.R.B. at 1142–43, the nature of those recommendations, and whether that history so aligns Waldau with management

as to confirm his status as "managerial." The nature of an employee's recommendations is relevant to the determination of status, as are the circumstances in which the recommendations are made. Gratuitous recommendations unrelated to an employee's experience and qualifications obviously have little bearing on status determinations. *See Bell Aerospace*, 416 U.S. at 290 n. 19, 94 S.Ct. at 1769 n. 19. Thus, the character of particular recommendations may inform the extent to which an employee is aligned with management.

## IV

■ Finally, we must determine whether, on the procedural history of this case, Waldau is entitled on remand to a full hearing on the Board's jurisdiction, or whether the hearing must be limited, as the AJ ruled, to the issues raised in Waldau's initial papers.

There is no statutory authority requiring the MSPB to hold a hearing on the threshold issue of jurisdiction. *Manning v. Merit Sys. Protection Bd.*, 742 F.2d 1424, 1427 (Fed.Cir. 1984). In *Manning*, however, this court noted that a "case[ ] may arise where the MSPB should hold an evidentiary hearing on jurisdiction." *Id.* at 1428. Such a case exists when a petitioner raises nonfrivolous allegations of controverted jurisdictional facts on which the MSPB's jurisdiction is clearly established if these facts are proven. *See, e.g., Burgess v. Merit Sys. Protection Bd.*, 758 F.2d 641, 643 (Fed.Cir.1985) (jurisdictional issue requiring nonfrivolous allegation of involuntariness); *Covington v. Department of Health & Human Servs.*, 750 F.2d 937, 943–44 (Fed.Cir.1984) (same); *Manning*, 742 F.2d at 1428 (same). The burden of the threshold requirement of demonstrating nonfrivolous allegations of jurisdictional facts rests on the petitioner. 5 C.F.R. § 1201.-56(a)(2)(i) (1993); *see also Clark v. United States Postal Serv.*, 989 F.2d 1164, 1167 (Fed. Cir.1993); *Maddox v. Merit Sys. Protection Bd.*, 759 F.2d 9, 10 (Fed.Cir.1985); *Stern v. Department of Army*, 699 F.2d 1312, 1314 (Fed.Cir.), *cert. denied*, 462 U.S. 1122, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983). Meeting that burden is a necessary prerequisite for a hearing on the Board's jurisdiction. *See Du-*

*mas v. Merit Sys. Protection Bd.*, 789 F.2d 892, 894 (Fed.Cir.1986); *Gribben v. Department of Justice*, 55 M.S.P.R. 257, 259 (1992) (appellant must make nonfrivolous allegation which is supported by factual assertions to obtain jurisdictional hearing); *Alford v. Department of the Army*, 47 M.S.P.R. 271, 274 (1991).

In the present case, the Board recognized that Waldau had met his threshold burden of raising a nonfrivolous allegation of jurisdiction and therefore remanded to the AJ for a hearing and a new decision on the Board's jurisdiction. *Waldau*, 54 M.S.P.R. at 194–195 (1992) (order remanding for jurisdictional hearing). In limiting the scope of the jurisdictional hearing on remand to whether Waldau was a management employee, and therefore ignoring Waldau's confidential status argument, the AJ reasoned in part that the Board's remand order "[did] not appear to expand upon the [management employee] issue decided in the initial decision." The Board, however, clearly remanded for a *"new* initial decision" on the issue of jurisdiction, explicitly stating that the AJ was to reach the merits of the case if she found "that the Board has jurisdiction over the appellant's case." The Board also explicitly withheld a decision on the confidential employee issue in light of its remand order. *Id.* at 195 n. 2.

Regardless of the reading given to the Board's remand order, the government contends that a petitioner, in his initial pleading, must allege *each and every nonfrivolous ground* on which he would attempt to base Board jurisdiction in a jurisdictional hearing, were he to qualify for such, or be forever barred from altering, amending, or otherwise adding to the asserted grounds in any subsequent proceedings on the issue. The touchstone as to whether the government is correct on this issue lies in a principle established in our precedent. In *Burgess*, an employee of the Federal Trade Commission appealed her removal to the Board. In light of the agency's argument that the Board lacked jurisdiction over the case because Burgess had voluntarily resigned her initial position as a secretary, and because the position into which she was reinstated before finally being removed was temporary, the AJ issued a

show cause order stating simply that Burgess had to "show cause why her appeal should not be dismissed for lack of jurisdiction." 758 F.2d at 642. In response, Burgess stated that she would produce evidence at a hearing demonstrating that her resignation was involuntary. The AJ characterized Burgess' response as a "mere conclusion" and dismissed her appeal for want of jurisdiction. The full Board denied Burgess' petition for review. *Id.* This court on appeal held that the AJ's notice to Burgess was legally insufficient in that it failed to apprise Burgess precisely and without confusion of what she was required to show to obtain a hearing on the jurisdictional issue. *Id.* at 643–44.

On the facts of that case, this court held that the notice to Burgess should have specified that she could overcome the initial jurisdictional hurdle by producing nonfrivolous allegations in support of her asserted grounds for jurisdiction. Legally sufficient notice, we held, requires clear notice to the appellant of what she must allege. *Id.* In the absence of such specific direction in the notice, "a contrary impression was conveyed," *id.* at 643, namely that Burgess was not required to respond particularly to the jurisdictional challenge. In forcefully concluding that the order issued to Burgess was "misleading, incomplete, and latently ambiguous" because of its lack of required specificity, the court noted that "[t]he government knows how to make [the employee's burden] plain...." *Id.* at 643–44. *Burgess* thus requires that the government must unambiguously and clearly give notice of that which it requires of a litigant.

Application of the principle established in *Burgess* to the circumstances of this case entitles Waldau to an adjudication of his claim that he qualifies as "engaged in personnel work in other than a purely nonconfidential clerical capacity." The government construes the AJ's Order in this case as having required Waldau to produce nonfrivolous allegations as to his status as both a management and a confidential personnel employee. The Order on its face, however, consistent with 39 U.S.C. § 1005(a)(4)(A)(ii), only informed Waldau that he could establish Board

jurisdiction *either* as a management employee *or* as a confidential personnel employee. The Order did not state that if Waldau asserted one ground in his response, he would be barred from raising the other ground at a subsequent jurisdictional hearing, or in the legal jargon of such orders, that "any subsequent hearing on jurisdiction will be restricted solely to the grounds for jurisdiction asserted in your response to this Order." Such, however, is precisely the meaning the government attributes to the AJ's Order. We cannot read the government's meaning into this Order, without contemporaneously concluding that the Order is incomplete and ambiguous, if not misleading, and therefore that it runs afoul of the *Burgess* principle.

Moreover, the Order is not saved from imprecision simply because it recites alternative statutory bases to establish Board jurisdiction. Nothing in the statute speaks to what is required to obtain a jurisdictional hearing before the Board. Recitation of alternatively drafted statutory language, without indication that all statutory grounds must be pleaded to qualify for a hearing on all such grounds, is hardly informative to the unaware. In short, Waldau simply was *not* informed by the AJ's Order that if he initially came forward with nonfrivolous allegations as to only one of the grounds for jurisdiction, he would be forever denied the opportunity to present evidence on the second ground at a subsequent jurisdictional hearing for which he would then have properly qualified.

In addition, we note that the government makes no argument that it is prejudiced by Waldau's failure to have raised both jurisdictional bases initially, nor that orderly process of the case before the AJ would have been unduly disrupted by adjudication of the confidential personnel employee status issue. The government also does not challenge Waldau's assertion that both parties fully expected the AJ to consider both jurisdictional issues when the case was remanded by the Board for a new decision on the jurisdictional issue. Indeed, the government has represented that it had briefed, and was fully prepared to address, both issues during the hearing on remand. Consequently, the Board on remand from this court must con-

sider whether Waldau's evidence establishes that he is indeed an employee "*engaged in personnel work* in other than a purely nonconfidential clerical capacity." 39 U.S.C. § 1005(a)(4)(A)(ii) (emphasis added). From the face of this standard, mere access to, or clerical manipulation of, personnel data, without more, would provide insufficient basis for classifying an employee as confidential under section 1005(a)(4)(A)(ii). Our decision on this particular issue simply establishes that Waldau has a right to be heard on his status as a confidential employee. It does not in any way evidence consideration of the merits of his evidence and argument. It is clearly not for this court on appeal to consider for the first time the evidence of record to determine whether Waldau qualifies as a confidential employee.

In addition, we express no view on the nature of the process due Waldau. Although the Board and our precedent speak of "evidentiary" hearings on jurisdictional issues, the AJ of course is not required to hold an evidentiary hearing if the proffered facts are not in dispute. In such circumstances, the hearing would be limited to the legal consequences of the agreed facts. Regardless of whether the hearing's nature is evidentiary or legal or both, however, the hearing should in any event be plenary on the question of the Board's jurisdiction. Accordingly, the case is remanded to the Board for further proceedings on this issue.

## V

The MSPB's decision regarding Waldau's status as a "management employee" under 39 U.S.C. § 1005(a)(4)(A) is vacated and the Board's decision denying Waldau a jurisdictional hearing on the confidential employee issue is reversed. The case is remanded for application of the correct legal standard to Waldau's factual assertions relating to his alleged "management" status, and for a determination of whether Waldau qualifies as a "confidential employee" for purposes of section 1005(a)(4)(A). On remand, the Board should be mindful of the impact of this court's recent decision in *McCandless v. Merit Sys. Protection Bd.*, 996 F.2d 1193, 1201 (Fed.Cir.1993), on both the Board's de-

cision in *Anmuth v. United States Postal Serv.*, 45 M.S.P.R. 656, 660 (1990), *aff'd without op.*, 932 F.2d 980 (Fed.Cir.1991), and the determination of Waldau's status as either a management or a confidential employee.

Costs to Waldau.

*VACATED–IN–PART, REVERSED–IN–PART and REMANDED.*