David D. BOLTON, Petitioner,

v.

MERIT SYSTEMS PROTECTION
BOARD, Respondent.

No. 98–3006.

United States Court of Appeals,
Federal Circuit.

Aug. 31, 1998.

John P. Gamlin, John P. DiFalco & Associates, P.C., of Fort Collins, Colorado, argued for petitioner. With him on the brief was Jenny L. Lopez.

Sara B. Rearden, Office of the General Counsel, Merit Systems Protection Board, of Washington, D.C., argued for respondent. With her on the brief were Mary L. Jennings, General Counsel and Martha B. Schneider, Assistant General Counsel. Of counsel was Joyce G. Friedman.

Before MAYER, Chief Judge, MICHEL, and SCHALL, Circuit Judges.

MICHEL, Circuit Judge.

This appeal presents yet another attempt by an employee of the United States Postal Service (the "postal service") to come within the narrow exception to the general rule that such employees' appeals from adverse personnel actions are not within the jurisdiction of the Merit Systems Protection Board (the "Board"). With our disposition of this appeal, several open questions about the outer limits of Board jurisdiction and how relevant criteria are to be adjudicated by the Board in establishing that jurisdiction will be resolved.

David Bolton filed an appeal with the Board challenging his reduction in pay and grade by the postal service. After a hearing, an Administrative Judge (the "AJ") dismissed Bolton's appeal for lack of jurisdiction. *See Bolton v. United States Postal Serv.*, No. AT-0752-96-0156-I-1 (Initial Decision Feb. 26, 1997). The AJ's decision became final on September 8, 1997, when the full Board denied Bolton's petition for review. Because the AJ correctly determined under applicable law that Bolton was neither a supervisor nor a manager, and because Bolton failed to demonstrate that, as a matter of law, he was ineligible for membership in a collective bargaining unit, we affirm the Board's dismissal of his appeal based on its decision that it lacked subject matter jurisdiction.

## BACKGROUND

In his twenty-one years of employment with the postal service, Bolton held several positions, including Management Trainee, Superintendent Stations and Branch Operations, and Station Manager. In November 1990, Bolton was assigned to the position of Postal Operations Specialist Senior ("POSS"), a Level 18, Step 9 position and part of a specific Engineering Technical Unit (the "ETU"). There were four other postal service employees also assigned to the ETU who worked in the same building with Bolton, including C. Jerry Burris, a Senior Field Industrial Engineer. Samah HeLal, the supervisor of the ETU, worked in a different building.

The facts of Bolton's specific performance problems in the POSS position are not fully developed in the record, but it appears that he repeatedly refused to follow the instructions of management. On July 10, 1992, Bolton signed a "last chance" settlement agreement to avoid suspension, accepting one final opportunity to perform satisfactorily in the POSS position. Subsequently, on September 23, 1992, he received a notice proposing to reduce him in pay and grade for failure to maintain peaceful relationships with customers, supervisors, peers, and other agency employees. On October 21, 1992, the district manager decided to reduce Bolton to a Part Time Flexible Clerk, Level 5, Step 0, effective October 27, 1992. Bolton appealed this action to the Board over three years later, on November 15, 1995.[1]

The postal service challenged the Board's jurisdiction to consider Bolton's appeal, asserting that Bolton was not an "employee" with the postal service as defined in 39 U.S.C. § 1005(a)(4)(A) (1994), and that, although Bolton was not a member of a collective bargaining unit, he was not ineligible for such membership as a matter of law. The AJ requested briefing on the jurisdictional question, and on April 17, 1996, conducted a hearing. Bolton, Burris, HeLal, and Larry Jones—the Field Director of Operations Support and HeLal's immediate supervisor during the relevant time period—all testified at the hearing. After considering the testimony of these witnesses as well as the documentary evidence presented, the AJ concluded that Bolton had failed to demonstrate, by a preponderance of the evidence, that he was a manager or a supervisor, and therefore dismissed Bolton's appeal as outside the scope of the Board's jurisdiction.

Bolton petitioned the Board for review of the AJ's jurisdictional decision, and the Board denied the petition. A timely appeal was filed with this court, and the case was submitted for decision after oral argument on July 8, 1998. We have jurisdiction under 28 U.S.C. § 1295(a)(9) (1994).

## ANALYSIS

 The Board's jurisdiction is not plenary; it is strictly defined and confined by statute and regulation. *See* 5 U.S.C. § 7701(a) (1994); *Maddox v. Merit Sys. Protection Bd.*, 759 F.2d 9, 10 (Fed.Cir.1985). Our ability to review a Board decision is similarly circumscribed by statute. *See* 5 U.S.C. § 7703(c) (1994); *King v. Department of the Navy*, 130 F.3d 1031, 1033 (Fed.Cir. 1997). We review the Board's legal conclusion regarding the scope of its own jurisdiction for correctness and without deference to the Board's determination. *See Harants v. United States Postal Serv.*, 130 F.3d 1466, 1468 (Fed.Cir.1997); *King*, 130 F.3d at 1033. Thus, although we may review freely the Board's conclusion that it did not have jurisdiction over Bolton's appeal, we are bound by the AJ's factual determinations unless those findings are not supported by substantial evidence.

As a general matter, the Board does not have jurisdiction over adverse actions taken against employees of the postal service. *See* 5 U.S.C. § 7511(b)(8) (1994). The Postal Service Employees Appeal Rights Act, Pub.L. No. 100–90, 101 Stat. 673 (1987) (codified as amended at 39 U.S.C. § 1005(a)(4) (1994)), however, authorizes the Board to consider appeals from adverse personnel actions, including reductions in pay or grade, filed by a postal service employee who "is in the position of a supervisor or a management employee in the Postal Service."[2] Bolton alleged that his POSS position was either supervisory or managerial within the meaning of the statute. He bore the burden of establishing Board jurisdiction by a preponderance of the evidence. *See* 5 C.F.R. § 1201.56(a)(2) (1998).

---

1. In an order dated January 8, 1996, the AJ determined that, only if Bolton could establish Board jurisdiction over his position and thereby over his reduction in pay and grade would the AJ entertain the postal service's proffered challenges based on the untimeliness of Bolton's appeal.

2. The statute also grants Board jurisdiction over appeals filed by a postal service employee who is a preference eligible or who is "engaged in personnel work in other than a purely nonconfidential clerical capacity." 39 U.S.C. § 1005(a)(4)(A)(i), (ii)(I) (1994). There is no dispute that Bolton did not meet either of these alternative criteria for Board jurisdiction.

Bolton, on appeal, argues that the AJ improperly ignored or discredited the evidence he presented in support of his contention that he was either a "supervisor" or a "management employee." He further argues that, by concluding he was neither a supervisor nor a manager, the AJ unlawfully created a class of postal service employees that can neither obtain the protection of membership in a collective bargaining unit nor appeal any adverse personnel actions to the Board. We examine each of these arguments in turn.

## I.

■ The postal service is the only federal entity subject to the jurisdiction of the National Labor Relations Board (the "NLRB"). *See McCandless v. Merit Sys. Protection Bd.*, 996 F.2d 1193, 1198 (Fed.Cir.1993). Because Congress used the same terms to define the scope of jurisdiction for both the NLRB and the Board with respect to all postal service employees, *compare* 39 U.S.C. § 1202 (1994) (the NLRB "shall not include in any [collective] bargaining unit ... any management official or supervisor") *with* 39 U.S.C. § 1005(a)(4)(A), the Board and this court have looked to national labor relations law for guidance with respect to what job authority or function will bring a particular postal service employee within the scope of its jurisdiction rather than the NLRB's. *See Waldau v. Merit Sys. Protection Bd.*, 19 F.3d 1395, 1398 (Fed.Cir.1994); *McCandless*, 996 F.2d at 1201. *See generally Benifield v. United States Postal Serv.*, 40 M.S.P.R. 50 (1989) (discussing Congress's intent in using identical terms to define both the NLRB's and the Board's jurisdictions).

## A.

■ Section 2 of the National Labor Relations Act defines "supervisor" as follows:
The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment. 29 U.S.C. § 152(11) (1994). Thus, if an employee may exercise, or "effectively recommend" that someone else exercise, any one of these twelve categories of discretionary authority, that employee may be considered a supervisor under the statute. *See NLRB v. KDFW–TV, Inc.*, 790 F.2d 1273, 1277 (5th Cir.1986) (noting that the definition of supervisor "is to be read in the disjunctive, with the existence of any one of the statutory powers sufficient to confer supervisory status").

We do not believe, however, that each of these potential twenty-four activities are equally indicative of supervisory authority for purposes of Board jurisdiction. The Board does not have the same specialized level of expertise as the NLRB does in interpreting and applying the federal labor laws to particular factual circumstances, nor does it have the resources to engage in the extensive, in-depth analysis of the status of each particular postal service employee as a prerequisite to exercising jurisdiction. *Cf. NLRB v. Swift & Co.*, 292 F.2d 561, 563 (1st Cir.1961) ("[T]he gradations of authority 'responsibly to direct' the work of others from that of general manager or other top executive to 'straw boss' are so infinite and subtle that of necessity *a large measure of informed discretion is involved in the exercise by the [NLRB] of its primary function* to determine those who as a practical matter fall within the statutory definition of a 'supervisor.'" (emphasis added) (footnote omitted)). Some further guidance from this court is therefore necessary.

■ After examining the existing case law,[3] we conclude that two particular functions are often substantially determinative of whether a postal service employee shall be considered a "supervisor" and therefore subject to Board jurisdiction. First, we conclude that the authority to discharge or discipline another employee, or effectively to recommend that another employee be disciplined or discharged, is usually a critical component of supervisory status. The abili-

**3.** Many of the key decisions in this area are Board decisions, rather than Federal Circuit decisions. Thus, our panels have had little binding precedent on which to rely.

ty to fire or otherwise discipline a subordinate lies at the heart of a supervisor's power, for it is often the threat of disciplinary action that most effectively encourages satisfactory performance. Thus, where an employee has full authority to discharge or otherwise discipline others, that alone is determinative that the employee is a supervisor. Furthermore, the authority of an employee to recommend effectively that others be discharged or disciplined, such that upper level management accepts such recommendations and implements them as a routine matter, is equally dispositive of supervisory status.

■ The second significant indicator of supervisory status is the employee's authority "responsibly to direct" the actions of others. As the Board has previously explained in *Smith v. United States Postal Service*, 54 M.S.P.R. 566 (1992), responsible direction requires that "the supervisor is held fully accountable for the performance and work product of the employees he directs." *Id.* at 570. Where, as a result of employees' failure to complete satisfactorily the tasks they are directed to perform, their supervisor may be discharged or disciplined, such a supervisor has authority responsibly to direct those employees. This type of accountability to upper-level management for the performance of subordinate employees is similarly dispositive of supervisory status.

■ Thus, we hold that these two factors—where an employee has authority to discharge or discipline others, or where an employee's own evaluation is based on the performance of his or her subordinates—when present, will dispose of the question whether an employee is a supervisor. Where these factors are not present, however, the Board will have to examine further the other statutory functions to determine if a postal service employee nonetheless is a supervisor. We believe, however, that it would require a particularly powerful finding of authority to exercise one of the other statutory functions to outweigh the employee's lack of authority to discipline or failure to be evaluated according to the performance of others.

**B.**

■ In *Waldau v. Merit Systems Protection Board*, 19 F.3d 1395 (Fed.Cir.1994), we noted that, unlike "supervisor," the term "management employee" is not explicitly defined in the relevant statutes. *See id.* at 1398. We therefore adopted the definition of "manager" as developed in Supreme Court labor decisions and NLRB case law. *See id.* Thus, managerial employees are those who "formulate and effectuate management policies by expressing and making operative the decisions of their employer." *Id.* (internal quotations omitted). We further explained the particular aspects of a postal service employee's job the Board should consider to determine whether that employee is a "manager":

> [W]hether [the employee's] recommendations *could* be rejected by actual management is irrelevant to the ultimate issue of whether he qualifies as a management employee under section 1005(a)(4)(A).... Instead, the focus should be on the history of [the postal service's] actual reactions to [the employee's] recommendations, the nature of those recommendations, and whether that history so aligns [the employee] with management as to confirm his status as "managerial." The nature of an employee's recommendations is relevant to the determination of status, as are the circumstances in which the recommendations are made. *Gratuitous recommendations unrelated to an employee's experience and qualifications obviously have little bearing on status determinations. Thus, the character of particular recommendations may inform the extent to which an employee is aligned with management.*

*Id.* at 1402 (second emphasis added) (citations omitted). Thus, while an employee's title is not necessarily determinative of status, *see Smith*, 54 M.S.P.R. at 570, the employee's authority to effectuate management's policies must be based on his or her actual position; an employee's independent attempts to influence workplace operations are not, in themselves, sufficient to confer managerial status.

## C.

With this legal background in mind, then, we examine the AJ's findings with respect to Bolton's employment status as a POSS and conclude that these findings are supported by substantial evidence. Bolton conceded he did not have any authority to discharge or discipline other postal service employees himself, but argued that he did have authority to recommend their discipline and discharge. In support of this claim, however, Bolton described only one instance of this alleged authority; he at one time recommended that an employee in another unit be disciplined for failing to secure stamp stock. There was no evidence in the record that management ordinarily expected or accepted such recommendations from Bolton, or that it effectuated Bolton's recommendation in this instance. Indeed, no evidence was presented showing that management had ever fired or disciplined any employee at Bolton's suggestion, and Jones clearly explained that only HeLal had ever recommended that disciplinary action be taken against an employee in the ETU. *See* Hearing Transcript, at 141 (Apr. 17, 1996). Furthermore, Bolton's example simply demonstrates a "gratuitous" attempt by him to encourage discipline, as discussed in *Waldau,* for he took action merely as a conscientious employee and not based on his position and authority within the postal service. This is hardly indicative that Bolton, as a routine matter, had any authority to recommend effectively that other employees be discharged or disciplined.

The AJ also found no indication that Bolton, as a POSS, was held accountable for the performance of other employees, either permanently or temporarily assigned to the ETU. Although Bolton's periodic evaluations were made part of the record, as well as his general and detailed job description and responsibilities, there is no indication that his satisfactory performance was based on the success or failure of others rather than his own ability to meet specified job objectives. In fact, the evaluations mainly addressed Bolton's ability to master and implement various technical skills and procedures. Furthermore, HeLal testified extensively that Bolton's merit reviews were not affected by the performance of the craft employees assigned to the ETU and explained that Bolton's only recourse when particular craft employees were not performing well was to "[t]urn [the employees] back over to their supervisor." *Id.* at 116; *see id.* at 114, 117. We agree, therefore, with the AJ's findings that Bolton had no authority to discipline or discharge others and that he was not accountable for the performance of others; certainly, these findings are supported by substantial evidence. Therefore, the AJ's threshold conclusion that Bolton lacked supervisory authority is not contrary to law or otherwise erroneous.

The AJ did in fact examine all of Bolton's assertions that he had authority to recommend the hiring, transfer, promotion, and reward of various employees during his two years as a POSS. The AJ's analysis of Bolton's evidence regarding each of these types of alleged authority was careful and exhaustive. Furthermore, the AJ properly considered other evidence presented, especially the testimony of HeLal and Jones, to determine that Bolton did not actually have supervisory authority as part of his POSS position. There was in fact extensive evidence presented by these witnesses, which undermined Bolton's assertions that he was a supervisor and, according to the AJ, the testimony of these witnesses was highly credible. *See Pope v. United States Postal Serv.,* 114 F.3d 1144, 1149 (Fed.Cir.1997) (where AJ finds testimony of other witnesses more credible than testimony of petitioner, we will not disturb findings based on these credibility determinations).

The written description for Bolton's POSS position does include, as one responsibility, "[o]versee[ing] and provid[ing] guidance and training to a small– to medium–size group of technicians and clerks." However, the Board has held and we agree that mere oversight and guidance are insufficient to establish supervisory status. *See Smith,* 54 M.S.P.R. at 570 ("While the position description states that the incumbent 'oversees and coordinates the activities of [technicians] assigned to the [unit],' it does not show that [the position] falls within the [National Labor Relations Act's] definition of supervisor. Direction of employees alone does not establish

supervisory status."). Furthermore, Jones and HeLal both testified that Bolton was assigned to the POSS position specifically because it required no supervision of others. *See* Hearing Transcript, at 121, 134 (Apr. 17, 1996). Although Bolton argues that the testimony supports his contention that generally a POSS position involves some supervisory authority, we agree that Bolton was assigned to the POSS position not subject to any special restrictions but specifically because it did not give him supervisory authority over others.

■ We note that other courts of appeals have recognized that the exercise of any one of the statutory functions must be accompanied by "independent judgment" to qualify an individual as a supervisor. *See, e.g., Monotech v. NLRB*, 876 F.2d 514, 517 (5th Cir.1989) (a supervisor is "anyone who has the authority to use independent judgment in the execution or recommendation of any of the functions listed" in the statute); *NLRB v. Chicago Metallic Corp.*, 794 F.2d 527, 530–31 (9th Cir.1986) ("The existence of any one of the enumerated powers *combined with 'independent judgment'* suffices to confer supervisory status." (emphasis added)). The fact that Bolton received detailed orders from management and then passed those orders along to others is highly indicative that Bolton was not a supervisor. The AJ specifically found that Bolton's role was merely "to communicate instructions between management and employees without significant discretion or independent judgment." *Bolton,* slip op. at 9. This statement implicitly determines that Bolton did not have discretionary authority or exercise independent judgment, based on substantial evidence in the record, and thus further supports the AJ's conclusion that Bolton was not a supervisor.

We conclude, therefore, that the AJ's findings regarding the statutory functions were well supported by evidence that was substantial. Thus, we agree that Bolton failed to demonstrate by preponderant evidence that he held a supervisory position, and the Board properly declined jurisdiction on the basis that Bolton's position did not meet the statutory definition of "supervisor."

■ The AJ also properly considered whether Bolton was a "management employee" in light of our case law. The AJ specifically followed our mandate in *Waldau* in evaluating the recommendations Bolton had made during his POSS tenure, especially the "nature" of the instructions and recommendations by Bolton. Based on this examination, the AJ concluded there was no evidence that Bolton implemented policy or exercised independent judgment in issuing these instructions or making these recommendations. Because these findings were made in accordance with our law and are supported by substantial evidence in the record, the decision of the AJ that Bolton was not a manager must be upheld. At a minimum, Bolton has failed to point to preponderant evidence supporting his assertion that he was a manager as a matter of law, for the evidence he presented was outweighed by the evidence supporting the government.

## II.

■ Bolton finally contends that the AJ's decision here violated our holding in *McCandless v. Merit Systems Protection Board,* 996 F.2d 1193 (Fed.Cir.1993), because the AJ has unlawfully placed him in a "third group" of postal service employees who neither have appeals rights to the Board nor may benefit from membership in a collective bargaining unit. In *McCandless,* we specifically held that a postal service employee must either fall within the Board's jurisdiction or the NLRB's jurisdiction, and the statutory definitions of supervisor and judicial definitions of manager may not be used to create a "third group" of postal service workers who do not fall within the scope of either agency's jurisdiction. *See id.* at 1201–02. Thus, the boundary between NLRB and Board jurisdiction divides the class of all postal service employees into two distinct and mutually exclusive subgroups, and there may not be a gap in between.

There is no indication, however, that the AJ here concluded, explicitly or implicitly, that Bolton would fall beyond *both* the NLRB's and the Board's jurisdictional reach. As discussed above, it is clearly the case that Bolton was neither a supervisor nor a man-

ager. Bolton, however, submitted a letter from the Chief Shop Steward of the local collective bargaining unit, which states that Bolton would "not be permitted to become an active member of the National Association of Letter Carriers," in support of his assertion that he also falls outside the scope of the NLRB's jurisdiction. There is no indication, however, that Bolton ever applied to the National Association of Letter Carriers for membership, or that he was denied membership. The letter on which Bolton relies is merely advisory, and does not represent the final say on Bolton's legal status with respect to the collective bargaining unit. Nor has Bolton shown any legal authority suggesting he is ineligible for union membership as a matter of law. Thus, the AJ's refusal to grant Board jurisdiction over Bolton's appeal does not create the conflict with *McCandless* that Bolton suggests.

## CONCLUSION

Bolton has failed to demonstrate that the Board's rulings regarding his supervisory or managerial status at the postal service were contrary to law or unsupported by substantial evidence. Nor has he shown that he has been relegated to a third category of postal service employees, *i.e.*, left in an impermissible gap between Board and NLRB jurisdiction. Therefore, the Board correctly concluded it lacked jurisdiction to entertain Bolton's appeal from his reduction in pay and grade and properly dismissed his appeal. On this record, we must

*AFFIRM.*