NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————————

**ORVILLE W. J. LAYTON,**
*Petitioner,*

v.

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent,*

**and**

**DEPARTMENT OF THE ARMY,**
*Intervenor.*

———————————————

2010-3063

———————————————

Petition for review of the Merit Systems Protection Board in case No. SF1221090069-W-1.

———————————————

Decided: September 9, 2010

———————————————

Orville W. J. Layton, of Eagle River, Alaska, pro se.

Calvin M. Morrow, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent. With him on the brief were James M. Eisenmann, General Counsel, and Keisha Dawn Bell, Deputy General Counsel.

Joseph A. Pixley, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for intervenor. With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Steven J. Gillingham, Assistant Director. Of counsel on the brief was Brian Bentley, Attorney, Civilian Personnel Branch, United States Army Legal Services Agency, of Arlington, Virginia.

_____

Before RADER, *Chief Judge*, LINN and MOORE, *Circuit Judges*.

PER CURIAM.

Orville Layton appeals from a final decision of the Merit Systems Protection Board (Board) dismissing his individual right of action appeal for lack of jurisdiction. *See Layton v. Merit Sys. Prot. Bd.*, No. SF-1221-09-0069-W-1 (M.S.P.B. May 5, 2009) (initial decision); *Layton v. Merit Sys. Prot. Bd.*, No. SF-1221-09-0069-W-1 (M.S.P.B. Oct. 30, 2009) (final order denying petition for review). For the reasons discussed below, we *affirm*.

BACKGROUND

Mr. Layton serves as an environmental law attorney for the U.S. Army Garrison Alaska (USAG-AK), Office of the Staff Judge Advocate (OSJA) in Anchorage, Alaska. OSJA provides legal counsel in civil and criminal matters to USAG-AK and to U.S. Army Alaska.

According to Mr. Layton, Army began work on the Taku Family Housing project at Fort Wainwright, Alaska (Taku project) in 2005. The Army soon discovered that the soil at the Taku project site was contaminated with hazardous substances, which caused construction delays. The USAG-AK Commander, Col. David Shutt, directed

the Pacific Region Chief of Staff to conduct an investigation into the Taku project delays, and the Chief of Staff submitted a report detailing his findings. In his report, the Chief of Staff identified various violations of Army environmental rules and regulations. He also identified specific individuals who appeared to have knowledge regarding the contamination and questioned the sufficiency and timeliness of decisions made by certain individuals regarding the health and safety of the community.

According to Mr. Layton, Army management was not convinced that this initial report accurately assessed the Taku situation. Therefore, Col. Shutt issued a memorandum tasking Mr. Layton with "conducting a comprehensive audit of the [Taku project] site selection and waste management practices." Pet. App. 72. The memorandum identified three areas of focus: (1) verifying that all pre-construction environmental site assessment actions conformed to applicable regulations and requirements; (2) verifying that all waste management practices during construction conformed to applicable regulations and requirements; and (3) determining whether USAG-AK's oversight and management of the construction contracting with respect to site assessment and waste management should be improved and, if so, recommending practices to effect such improvement. The memorandum directed Mr. Layton to review records and to interview Army and contractor personnel with responsibility for site access and/or waste identification, management, or disposal. It also identified specific questions that the audit should answer, "in addition to considering how best to maintain or achieve effective oversight of such matters on future contracts." *Id.* The memorandum directed Mr. Layton to provide Col. Shutt with a report of his findings, along with copies of all substantiating documents and

recommendations for improving site selection and waste management procedures.

Mr. Layton approached various individuals to gather information and documents relevant to the Taku project, representing that Col. Shutt had "appointed" him to perform the audit. During the course of the audit, Mr. Layton met with Col. Shutt and Lt. Col. Maxwell, one of Mr. Layton's supervisors at OSJA, to discuss his progress. Mr. Layton also submitted drafts and supporting documents to his two immediate OSJA superiors for their review and comment prior to submitting his final report to Col. Shutt.

In his final report, Mr. Layton concluded that various errors and wrongdoing had occurred during construction of the Taku project, reiterating many of the concerns identified in the Chief of Staff's earlier report. Mr. Layton offered recommendations for addressing these concerns, including taking disciplinary action against specific individuals who had violated or allowed violations of law or regulations. In particular, Mr. Layton identified four individuals who had potentially violated laws or regulations in connection with handling contaminants, and one individual who had intentionally misled Army officials regarding the contamination.

In April 2008, Mr. Layton filed a complaint with the U.S. Office of Special Counsel (OSC), alleging that Army personnel retaliated against him because of "whistleblowing" disclosures contained in his audit report. Specifically, Mr. Layton alleged that Army limited the scope of his duties, scrutinized his work, and failed to select him for a position in retaliation for his disclosures. OSC determined that the audit was part of Mr. Layton's assigned job responsibilities and that Mr. Layton conveyed the report's findings through normal channels. OSC cited

*Huffman v. Office of Personnel Management*, 263 F.3d 1341 (Fed. Cir. 2001), where we held that "reports made as part of an employee's assigned normal job responsibilities are not covered by the [Whistleblower Protection Act] when made through normal channels." *Id.* at 1344. Under *Huffman*, OSC concluded that Mr. Layton had not made any protected disclosures and terminated its inquiry into Mr. Layton's allegations.

Mr. Layton filed an independent right of action appeal with the Board and requested relief under the Whistleblower Protection Act (WPA), 5 U.S.C. § 2302(b)(8), alleging that Army retaliated against him for whistleblowing activities. In an initial decision, the administrative judge (AJ) dismissed Mr. Layton's appeal for lack of jurisdiction. The AJ found that Mr. Layton performed the audit pursuant to an express order; that he coordinated the audit and accompanying report with his superiors; and that he relied on USAR-AK and OSJA resources, time, and authority to complete the investigation. Therefore, the AJ found that the discussion and findings in Mr. Layton's report accompanying his audit were part of his normal, assigned duties. The AJ also found that Mr. Layton reported the findings of his investigation within the normal channels, because he conveyed his findings only to Col. Shutt, who had given him the audit assignment, and to his normal OSJA supervisors. The AJ determined that Mr. Layton had not alleged a protected disclosure, and therefore had failed to establish jurisdiction.

Mr. Layton petitioned for review of the AJ's initial decision to the Board, which reopened the case on its own motion pursuant to 5 C.F.R. § 1201.118. In his petition, Mr. Layton argued that the allegations of wrongdoing contained in his report went beyond the scope of his assignment to audit the Taku project. Therefore, Mr. Layton asserted, his petition presented a nonfrivolous

allegation that he had made a protected disclosure, sufficient to support jurisdiction. The Board observed that it was undisputed that Army assigned Mr. Layton a duty to investigate and report on the Taku project. Under *Huffman*, the Board noted, any disclosures made pursuant to this assigned duty were not protected under the WPA. The Board also observed that Mr. Layton discussed his progress with, and received feedback from, his superiors as he conducted the investigation and prepared his report. To the extent the scope of the final report differed from the initial assignment, the Board found that this difference was due either to Mr. Layton's investigation—which was pursuant to his assigned duty—or to feedback from his superiors. Therefore, the Board found that Mr. Layton had not shown that the disclosures in his report were outside the scope of his assigned duties and had not presented a nonfrivolous allegation of jurisdiction. The Board affirmed the AJ's initial decision, as modified by its opinion and order. *Layton v. Merit Sys. Prot. Bd.*, No. SF-1221-09-0069-W-1 (M.S.P.B. Oct. 30, 2009).

Mr. Layton appeals the Board's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1311 (Fed. Cir. 2003). "We review whether the MSPB has jurisdiction over an appeal *de novo*." *Coradeschi v. Dep't of Homeland Sec.*, 439 F.3d 1329, 1331 (Fed. Cir. 2006). "Factual findings

underlying the Board's jurisdictional conclusions, however, are entitled to deference unless unsupported by substantial evidence." *Bolton v. Merit Sys. Prot. Bd.,* 154 F.3d 1313, 1316 (Fed. Cir. 1998).

Mr. Layton, as the petitioner, bears the burden of establishing jurisdiction. *Kahn v. Dep't of Justice*, 528 F.3d 1336, 1341 (Fed. Cir. 2008). The Board has jurisdiction over an independent right of action appeal if "a petitioner has exhausted his or her administrative remedies before the OSC and makes non-frivolous allegations that (1) he or she engaged in whistleblowing activities by making a protected disclosure under 5 U.S.C. § 2302(b)(8) and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)." *Id.* We held in *Huffman* that reports made as part of an employee's normal, assigned duties are not "protected disclosures" under the WPA when made through normal channels. 263 F.3d at 1344, 1352.

Mr. Layton argues that the disclosures in his report identifying wrongdoing by Army personnel and contractors were protected disclosures under the WPA. He argues that the disclosures were not made as part of his normal duties because his assignment to audit the Taku project did not cover investigating the misconduct of Army officials. Mr. Layton also argues that he did not disclose his findings of misconduct through normal channels because his findings were communicated to officials outside Col. Shutt's chain of command and without Col. Shutt's permission.

The Board found that Mr. Layton's disclosures of misconduct were within the scope of his normal, assigned duties. Substantial evidence supports this finding. There is no dispute that Mr. Layton performed his investigation

of the Taku project pursuant to direct orders, as set forth in Col. Shutt's memorandum. The memorandum broadly tasked Mr. Layton with conducting "a comprehensive audit" of the Taku project's site selection and waste management practices. Pet. App. 72. It specifically instructed Mr. Layton to verify that all actions related to site assessment and waste management conformed to all applicable rules and regulations and to articulate any ways in which Army's management practices with respect to site assessment and waste management should be improved. After performing his investigation of the Taku project, Mr. Layton identified certain Army officials who had potentially violated laws and regulations through improperly handling contaminants and misleading Army officials regarding the contamination. These findings of misconduct, which Mr. Layton discussed in his report, plainly fall within the scope of Mr. Layton's duties to verify compliance with applicable regulations and to identify ways to improve Army's management of site assessment and waste management issues. Further, Mr. Layton conferred with Col. Shutt and his OSJA supervisor regarding his progress on the audit and provided his OSJA supervisors with drafts of the report containing the findings of misconduct.

Mr. Layton next argues that the audit was not intended to encompass an investigation into possible misconduct by Army employees or contractors. To support this contention, Mr. Layton asserts that Col. Shutt's memorandum fails to comply with the requirements of Army Regulation (AR) 15-6, the regulation that controls formal investigations of Army officials. However, the Board did not find—and Army did not claim—that Mr. Layton's audit assignment was an investigation pursuant to AR 15-6. Rather, the purpose of the audit was to comprehensively review the site selection and waste

management practices associated with the Taku project, to verify that all such practices complied with the applicable laws and regulations, and to identify ways to improve these practices. Mr. Layton's findings related to Army officials' potential violation of applicable rules and regulations during construction were relevant to these purposes and thus within the scope of Mr. Layton's assigned duties.

Mr. Layton also argues that his disclosures were made outside of normal channels. He asserts that the findings in his audit report were provided to the U.S. Army Alaska commander and to officials within Alaska District Corps of Engineers, all of whom were outside of Col. Shutt's chain of command. However, Mr. Layton did not disclose the findings in his report to these individuals; rather, Mr. Layton's superiors in OSJA forwarded his findings to the U.S. Army Alaska commander and officials in the Corps of Engineers. The record contains no evidence that Mr. Layton disclosed his findings to anyone other than his superiors in OSJA and to Col. Shutt, the official who initially tasked Mr. Layton with the audit assignment. Therefore, substantial evidence supports the Board's finding that Mr. Layton did not make the disclosures outside of normal channels.

Because substantial evidence supports the Board's findings that Mr. Layton made the disclosures of potential misconduct by Army officials as part of his assigned duties and through normal channels, these disclosures were not "protected disclosures" under the WPA. *Huffman*, 263 F.3d at 1344. Therefore, the Board correctly determined that Mr. Layton failed to raise a nonfrivolous allegation of jurisdiction.

CONCLUSION

We have considered Mr. Layton's remaining arguments and find them to be without merit. For the foregoing reasons, we affirm the final decision of the Board dismissing Mr. Layton's appeal for lack of jurisdiction.

**AFFIRMED**

COSTS

No costs.