# United States Court of Appeals for the Federal Circuit

---

**MARK EDENFIELD,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2021-2001

---

Petition for review of the Merit Systems Protection Board in No. AT-1221-19-0440-W-2.

---

Decided: December 5, 2022

---

NATHANIEL M. EDENFIELD, Sodhi Spoont PLLC, West Palm Beach, FL, argued for petitioner. Also represented by ERIC SODHI, Miami, FL.

DOMENIQUE GRACE KIRCHNER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY.

---

Before CHEN, BRYSON, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Dr. Mark Edenfield appeals a decision from the Merit Systems Protection Board that he did not make a protected disclosure under the Whistleblower Protection Act. Because the Board erred in finding that Dr. Edenfield did not make a protected disclosure, we reverse and remand for further proceedings.

I

Dr. Edenfield is a staff anesthesiologist at the James H. Quillen Veterans Affairs Medical Center (Quillen VAMC) in Mountain Home, Tennessee. From 2004 until 2016, Dr. Edenfield supervised Quillen VAMC's Pre-Operative Clinic, which was one of his roles as Chief of Anesthesia.

In 2016, Quillen VAMC began to review and revise its policy for obtaining informed consent[1] for endoscopic procedures. Before the policy change, physicians obtained informed consent on the day of the procedure, which cut into their time available to perform procedures. The new policy would allow mid-level practitioners, such as nurse practitioners and physician assistants, to obtain informed consent from patients the day before the procedure. Over a six-month period, the proposed policy change was reviewed by

---

[1]    All medical treatments and procedures at Veterans Affairs medical centers, including Quillen VAMC, require the prior, voluntary informed consent of the patient or an authorized surrogate. The process of obtaining informed consent involves providing the patient with information about the procedure or treatment they will undergo, answering questions about the procedure or treatment, and confirming that the patient consents to the procedure or treatment.

(1) the National Center for Ethics in Health Care (NCEHC), which writes and reviews agency policies related to ethics; (2) the Credentialing Committee, which consists of several Quillen VAMC service chiefs as well as the heads of pharmacy, audiology, and dental services; (3) the Medical Executive Board (MEB), a group of 20 physicians as well as the Quillen VAMC Medical Center Director; and (4) the Veteran Integrated Service Network, a regional group of providers that includes Quillen VAMC. All four groups approved the new policy.

On June 27, 2016, Quillen VAMC's credentialing office sent an email to several employees, including Dr. Edenfield, asking which mid-level practitioners needed re-credentialing packets that covered obtaining informed consent. Dr. Edenfield responded, claiming that it was against the Department of Veterans Affairs' policy for mid-level practitioners to obtain informed consent for endoscopic procedures. Dr. Edenfield quoted the definition of "practitioner" from the Veterans Health Administration Handbook (Handbook), which requires practitioners obtaining informed consent to be "appropriately trained and authorized to perform the procedure or to provide the treatment for which consent is being obtained." J.A. 581.[2] According to Dr. Edenfield, none of the mid-level practitioners in the Pre-Operative Clinic were authorized to perform endoscopic procedures and, therefore, were not authorized to obtain informed consent.

In response, Lori Hagen, Chief of Quality Management at Quillen VAMC, told Dr. Edenfield that "we know the Directive and have further written guidance and are following it." J.A. 580–81. Ms. Hagen also explained that the policy was discussed and approved by the MEB. Ms. Hagen later offered to meet with Dr. Edenfield and Dr. David

---

[2]    All J.A. citations refer to the joint appendix filed by the parties.

Hecht, the Chief of Staff at Quillen VAMC. During the meeting, Dr. Edenfield reiterated his belief that it would violate the Handbook to allow mid-level practitioners to obtain informed consent for endoscopic procedures, while Ms. Hagen and Dr. Hecht explained why the new policy did not violate the Handbook. Although the parties dispute the driving factor leading to his role change, Dr. Edenfield ultimately stepped down as the supervisor of the Pre-Operative Clinic.

About two years later, on April 11, 2018, a Market Pay Review Panel reviewed Dr. Edenfield's salary. Dr. Hecht was one of the physicians on this review panel. Although Dr. Edenfield's supervisor recommended that Dr. Edenfield receive a pay increase, the panel voted to keep Dr. Edenfield's salary the same. This prompted Dr. Edenfield to write a letter to the Quillen VAMC Director, alleging that Dr. Hecht was retaliating against him for questioning the new informed consent policy. Dr. Edenfield eventually resigned as Chief of Anesthesiology and became a staff anesthesiologist.

Dr. Edenfield filed a complaint with the Office of Special Counsel (OSC), alleging that he had been retaliated against for making protected disclosures in violation of the Whistleblower Protection Act (WPA). OSC determined that there was no WPA violation and closed its investigation, after which Dr. Edenfield appealed to the Merit Systems Protection Board, requesting corrective action. administrative judge denied Dr. Edenfield's request for corrective action and found that Dr. Edenfield did not meet his burden to show that his statements were protected disclosures under 5 U.S.C. § 2302(b)(8). In particular, the administrative judge found that Dr. Edenfield did not have a reasonable belief that the new informed consent policy violated any agency regulation or the Handbook.

Dr. Edenfield now appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

We set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Legal conclusions by the Board are reviewed de novo. *Wrocklage v. Dep't of Homeland Sec.*, 769 F.3d 1363, 1366 (Fed. Cir. 2014).

## III

The WPA protects disclosures made by federal employees who reasonably believe that the disclosure evidences a violation of a law, rule, or regulation. 5 U.S.C. § 2302(b)(8)(A)(i). To determine whether a belief is reasonable, we ask whether a "disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [could] reasonably conclude" that the agency's action violates a law, rule, or regulation. *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999).

The issue before us is whether the Board properly concluded that Dr. Edenfield did not have a reasonable belief that Quillen VAMC's new informed consent policy violated the Handbook. The Board's determination relied largely on its interpretation of the Handbook and its conclusion that "[a] plain reading of this regulation does not limit obtaining informed consent to the physician performing the procedure . . . ." J.A. 12.

The proper interpretation of an agency manual, like the interpretation of a statute or regulation, is a question of law that we consider de novo on appeal. *See Welshans v. U.S. Postal Serv.*, 550 F.3d 1100, 1102–03 (Fed. Cir. 2008). And, as we explain further below, the Board's legal interpretation is incorrect. The more natural reading of the Handbook provision is likely that of Dr. Edenfield, but at

the very least, the definition of "practitioner" is ambiguous, rendering Dr. Edenfield's interpretation reasonable.

A

The Handbook states that informed consent must be obtained by a "practitioner."[3] The Handbook defines "practitioner" as follows:

> *Practitioner.* A practitioner is defined as any physician, dentist, or health care professional granted specific clinical privileges to perform the treatment or procedure. For the purpose of this Handbook, the term practitioner also includes:
>
> . . . .
>
> (2) Other health care professionals whose scope of practice agreement or other formal delineation of job responsibility specifically permits them to obtain informed consent, and who are appropriately trained and *authorized to perform the procedure* or to provide the treatment for which consent is being obtained.

---

[3]    The informed consent policies in the Handbook are drafted to cover a variety of medical measures, including those that might not be "procedures" in the traditional sense, such as non-surgical treatments. When obtaining informed consent, the practitioner must be able to fully describe the procedure or treatment and answer any questions that the patient might have. It is important that a practitioner be authorized to perform the procedure or provide the treatment—if they are not, they might not be fully knowledgeable about what the patient is about to endure.

Veterans    Health    Administration    Handbook
§ 1004.01(2)(3)(j)(2) (Aug. 14, 2009) (emphasis added).

"Practitioner" is broadly defined because the Handbook covers obtaining informed consent for a variety of medical procedures and treatments, not only endoscopic procedures. Even though there are situations where other health care professionals, such as mid-level practitioners, may obtain informed consent, this does not mean mid-level practitioners can *always* obtain informed consent. The definition of "practitioner" lays out two conditions for "other health care professionals" to obtain informed consent: (1) the scope of practice or job delineation must permit them to obtain informed consent; ***and*** (2) they must be appropriately trained and authorized to either (a) perform the procedure ***or*** (b) to provide the treatment. *Id*. The second prong is ambiguous about the relationship between being authorized to perform a procedure and being authorized to provide treatment. At Quillen VAMC for example, mid-level practitioners are undisputedly *not* authorized to perform endoscopic procedures. However, mid-level practitioners do provide certain treatments related to endoscopic procedures. This raises a question about whether, in the context of performing endoscopic procedures, mid-level practitioners such as nurse practitioners and physician assistants qualify as "other health care professionals" under the definition.

The agency argues that the Board properly adopted its interpretation of the Handbook because "[m]id-levels would fall under the [']other health care professionals' category and, as such, would be able to obtain informed consent if their scope of practice permitted it, and if they were appropriately trained to either perform the procedure or provide the treatment." Appellee's Br. 36 (quoting J.A. 12). Under the agency's interpretation, mid-level practitioners were covered under the definition because, even though they could not perform endoscopic procedures themselves, they were authorized to provide treatment related to

endoscopic procedures, such as overseeing the preparation for endoscopic procedures and following up with the patient after the procedure was completed. Appellee's Br. 37–38.

Here, we do not need to determine whether the agency or Dr. Edenfield had the correct interpretation of the Handbook. As we have previously held, an employee's belief that a violation occurred can still be *reasonable* even if it is *wrong. Drake v. Agency for Int'l Dev.*, 543 F.3d 1377, 1382 (Fed. Cir. 2008). Even if the agency's interpretation of the Handbook is a possible interpretation, it is not, as the Board erroneously held, the only plain interpretation. The definition of "practitioner" in the Handbook was clearly susceptible to multiple interpretations: one where mid-level practitioners could obtain informed consent if they were part of a treatment team, and another where mid-level practitioners could not obtain informed consent if they were not authorized to perform the procedure. For example, at least two other Quillen VAMC employees interpreted the Handbook the same way as Dr. Edenfield and felt that mid-level practitioners were not authorized to obtain informed consent for endoscopic procedures. Even Dr. Jason Dominitz, the National Program Director of Gastroenterology who testified on behalf of the agency, admitted that the definition of practitioner was "open to interpretation." J.A. 268.

The definition in the Handbook is ambiguous at best, and Dr. Edenfield's interpretation reflects that ambiguity. Because the definition is at least ambiguous and both Dr. Edenfield's and the agency's interpretations are reasonable, the Board erred in holding that Dr. Edenfield did not have a reasonable belief that he was making a protected disclosure.

B

Furthermore, when applying the test for what constitutes a reasonable belief, the Board must look to the information that would have been available to or ascertainable

by a disinterested observer *at the time they made the disclosure*. Dr. Edenfield first expressed his belief in response to the email about re-credentialing packets. When Dr. Edenfield made his disclosure, he relied on the Handbook's definition of "practitioner," the corresponding regulation at 38 C.F.R. § 17.32 that contains the definition, and a fact sheet from the NCEHC. Appellant's Br. 10–11. There is nothing in the record suggesting that a disinterested observer standing in Dr. Edenfield's shoes could have known or ascertained additional information before making the disclosure. Based on the information he had at the time of his disclosure, Dr. Edenfield reasonably believed that the policy allowing mid-level practitioners to obtain informed consent for endoscopic procedures would violate the Handbook.

Dr. Edenfield expressed his belief in the context of obtaining informed consent for procedures such as endoscopies and colonoscopies. When Dr. Edenfield made his disclosure, mid-level practitioners at Quillen VAMC were not authorized to perform these procedures, which are performed by physicians because they require placing a scope inside a patient. Based on the language of the Handbook, Dr. Edenfield believed that mid-level practitioners were not authorized to obtain informed consent.

The Board concluded that Dr. Edenfield's belief was unreasonable in part because Ms. Hagen and Dr. Hecht explained that Quillen VAMC had obtained approval for this new policy from several decision-making bodies during their meeting. But when Dr. Edenfield made his disclosure, he could not have known about the steps Quillen VAMC had taken to get the new policy approved because he was not involved in this decision-making process, nor was this information publicly available. Dr. Edenfield was first given information about the decision-making process in an email from Ms. Hagen *after* he first voiced his belief. Dr. Hecht and Ms. Hagen did not provide Dr. Edenfield with any other information about the approval process until

their in-person meeting *after* he had made his disclosure, and *after* he had explained why he thought the new policy violated the Handbook. At least two of the agency's witnesses testified that the information supporting Quillen VAMC's interpretation of "practitioner" was not publicly available or readily ascertainable. The Board erred by relying on information that would not have been known to or readily ascertainable by a disinterested observer, because such information cannot support a finding that Dr. Edenfield's belief was unreasonable.

## IV

Because the Board erred in finding that Dr. Edenfield did not make a protected disclosure under 5 U.S.C. § 2302(b)(8), we reverse and remand for further proceedings consistent with this opinion.

### REVERSED AND REMANDED

COSTS

Costs to petitioner.