NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MICHAEL L. LEVINSON,**
*Petitioner*

**v.**

**SOCIAL SECURITY ADMINISTRATION,**
*Respondent*

---

2023-2277

---

Petition for review of the Merit Systems Protection Board in No. CB-7521-17-0023-T-1.

---

Decided: July 30, 2024

---

MICHAEL L. LEVINSON, Atlanta, GA, pro se.

MEEN GEU OH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

---

Before DYK, SCHALL, and HUGHES, *Circuit Judges*.

Per Curiam.

Michael L. Levinson, appearing pro se, challenges the Merit Systems Protection Board's decision that the Social Security Administration proved its charges of misconduct and that good cause existed for removal from his position as an administrative law judge. For the reasons that follow, we affirm.

I

Since his appointment in 2004, Mr. Levinson has been an administrative law judge in the Social Security Administration's (SSA) Office of Disability Adjudication and Review at the Macon, Georgia hearing office. S.A. 2.[1] Between January 2008 and May 2015, Mr. Levinson was detailed to the Birmingham, Alabama hearing office, but returned to the Macon hearing office in June 2015. S.A. 45. On June 28, 2017, the SSA filed a complaint charging Mr. Levinson with neglect of duties, failure to follow directives, and conduct unbecoming of an administrative law judge. S.A. 2–3. Based on these charges, the MSPB concluded the SSA established good cause for Mr. Levinson's removal and authorized the SSA to remove him. S.A. 26. The conduct relevant to each charge is described below.

A

Mr. Levinson was first charged with neglect of duty based on the content of his decisions as an administrative law judge. S.A. 5 (final MSPB decision); S.A. 53–54 (initial MSPB decision). In 2015, the Office of Appellate Operations Division of Quality randomly sampled a collection of Mr. Levinson's decisions for "a focused quality review." S.A. 46. This review "identified deficiencies in multiple areas of [Mr. Levinson]'s decisions, including amended

---

[1]    Citations to "S.A." refer to the Supplemental Appendix accompanying the SSA's response brief.

alleged onset dates, evaluation of opinion evidence, application of the five-step sequential process, evaluation of residual functional capacity, vague or incomplete hypothetical questions at hearings, and bench decisions." S.A. 46. The Hearing Office Chief Administrative Law Judge (HOCALJ), Amy Uren, met with Mr. Levinson about the results of the review and in 2016, directed Mr. Levinson to complete a 25-day training course to address the identified deficiencies. S.A. 45–46. Mr. Levinson completed the training course in 2016. S.A. 46. Subsequently, the agency re-reviewed Mr. Levinson's more recent 2016 decisions, and concluded that the previously identified deficiencies persisted. *See* S.A. 46. The Associate Chief Administrative Law Judge for Field Procedures and Employee Relations, Mark Sochaczewsky, then reviewed additional decisions, which he "identified as non-compliant with agency regulations, policy, and interpretations of law," and Mr. Sochaczewsky issued a written report "identifying deficiencies in all 25 decisions" that he reviewed. S.A. 46–47. Reviewing this evidence, the MSPB determined that the SSA had shown, by preponderant evidence, that Mr. Levinson had neglected his duties. S.A. 53; *see also* S.A. 5 & n.3, 10.

B

Mr. Levinson was next charged with failure to follow three specific directives from his supervisors at the Macon and Birmingham hearing offices. S.A. 6–9 (final MSPB decision); *see also* S.A. 54–59 (initial MSPB decision).

First, on November 12, 2014, while Mr. Levinson was detailed to the Birmingham hearing office, HOCALJ Edward Zanaty "issued a directive to [Mr. Levinson] instructing him to cease directly contacting expert witnesses and avoid any off the record discussions with expert witnesses regarding their availability to provide testimony." S.A. 45, 47. Instead, as required by office policy, Mr. Levinson was instructed "to have hearing office staff

select and contact medical experts on a rotational basis as mandated by [the SSA's Hearings, Appeals, and Litigation Law Manual]." S.A. 55–56. Nonetheless, Mr. Levinson "continued to directly contact medical experts to determine their availability for hearings." S.A. 47. Based on these facts, the MSPB determined that the SSA had proven that Mr. Levinson violated HOCALJ Zanaty's November 12 directive. S.A. 6–9; *see also* S.A. 54–56.

Second, on June 28, 2016, HOCALJ Uren issued a directive to Mr. Levinson based on his failure to "comply with agency policy and correct issues identified in the focus quality review." S.A. 56. Mr. Levinson was specifically directed to "comply with the Social Security Act, as well as agency regulations, rulings, policy statements, and other interpretations of the law in hearing and deciding cases." S.A. 56. The MSPB determined that Mr. Levinson's continued failure to issue compliant decisions, as evidenced by the results of the re-review and Mr. Sochaczewsky's review, constituted preponderant evidence that Mr. Levinson violated HOCALJ Uren's June 2016 directive. S.A. 58; *see also* S.A. 6.

Third, during the summer of 2016, HOCALJ Uren repeatedly directed Mr. Levinson to attend sensitivity training based on "conduct unbecoming" of an administrative law judge. S.A. 47. On October 24, 2016, HOCALJ Uren issued her third directive to Mr. Levinson to attend sensitivity training on October 26, 2016. S.A. 47. Mr. Levinson refused to attend any sensitivity training. S.A. 47–48. The MSPB found that the SSA had proven that Mr. Levinson violated a third directive given by HOCALJ Uren on October 24, 2016. S.A. 9; *see also* S.A. 58–59.

C

Finally, Mr. Levinson was charged with conduct unbecoming of an administrative law judge due to his "outbursts over the course of 5 days between August 2016 and January 2017." S.A. 9 (final MSPB decision); *see also* S.A. 59–64

(initial MSPB decision). After HOCALJ Uren advised Mr. Levinson of a scheduled Weingarten[2] meeting regarding "his possible violations of multiple agency directives . . . as well as conduct unbecoming [of] an [administrative law judge]," Mr. Levinson went to her office on August 24, 2016. S.A. 48. While there, Mr. Levinson "became upset and was shaking," telling "HOCALJ Uren in a raised voice that she was harassing him, [that she] can't hide her actions behind other people, and [that she] is responsible for her actions." S.A. 48. Then Mr. Levinson "got close to HOCALJ Uren's face and said she was like a Nazi and worse than a Nazi." S.A. 48. On September 6, 2016, during the Weingarten meeting, Mr. Levinson accused HOCALJ Uren of being "a liar" and said that "everything [she said was] a lie." S.A. 48.

Several months later, on December 13, 2016, HOCALJ Uren approached Mr. Levinson to organize a time to discuss medical expert invoices. S.A. 48. Mr. Levinson "became upset, was physically shaking, and red faced," said that he "would not answer a single question that [HOCALJ Uren] ask[ed] of" him, and "shouted [that] . . . [HOCALJ Uren] was the worst." S.A. 48–49. Another administrative law judge intervened to separate HOCALJ Uren and Mr. Levinson. S.A. 49.

On January 9, 2017, HOCALJ Uren informed Mr. Levinson that he was subject to an administrative investigation, and while she was speaking, Mr. Levinson "got up, stated he was not going to listen to anything [she] had to

---

[2]    Union employees are entitled "to have a union representative present at an investigatory meeting[, known as a Weingarten meeting,] if the employee believes that there might be disciplinary action." *Baker v. Dep't of Interior*, 243 F.3d 566 (Table), 2000 WL 1681219, at *3 n.4 (Fed. Cir. 2000) (non-precedential) (citing *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 262 (1975)).

say, and left the office." S.A. 49. When HOCALJ Uren attempted to serve Mr. Levinson with a written directive on January 11, 2017, he went into a hearing room and refused to allow her to enter. S.A. 49. When HOCALJ Uren eventually entered the hearing room, Mr. Levinson refused to take the written directive and stated he would "not . . . read it." S.A. 49. When HOCALJ Uren gave Mr. Levinson the written directive, he tore it up and left the hearing room. S.A. 49.

The MSPB determined that the SSA proved by preponderant evidence that Mr. Levinson engaged in conduct unbecoming of an administrative law judge on August 24, 2016; September 6, 2016; December 13, 2016; January 9, 2017; and January 11, 2017. S.A. 9–10; S.A. 59–64.

The SSA requested that the MSPB (1) suspend Mr. Levinson from the date of the SSA's complaint until the MSPB issued its final decision and (2) ultimately remove Mr. Levinson from federal service. S.A. 17. After concluding that the SSA met its burden on each of its charges against Mr. Levinson, the administrative law judge, in the MSPB's initial decision, determined that "there was good cause to suspend the respondent for 2 years and demote him." S.A. 17. Mr. Levinson petitioned for review by the full MSPB of the administrative judge's decision sustaining the charges. S.A. 4–5. The SSA petitioned for review by the full MSPB, arguing the administrative judge erred when it approved a lesser penalty than removal. S.A. 4–5. In its final decision, the MSPB found good cause for the penalty of removal, considering the applicable *Douglas*[3] factors, and

---

[3]    The *Douglas* factors are used to determine the reasonableness of a penalty imposed on a federal employee. *Torres v. Dep't of Homeland Sec.*, 88 F.4th 1379, 1383 (Fed. Cir. 2023) (citing *Douglas v. Veterans Admin.*, 5 M.S.P.B. 313, 331–33 (1981)).

affirmed the administrative law judge's initial decision as modified. S.A. 1, 17–24.

Mr. Levinson timely appealed. We have jurisdiction to review the final decision of the MSPB under 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1)(A).

## II

We will set aside the MSPB's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Edenfield v. Dep't of Veterans Affs.*, 54 F.4th 1357, 1359 (Fed. Cir. 2022). Further, "we are bound by the [administrative judge's] factual determinations unless those findings are not supported by substantial evidence." *See Bolton v. Merit Sys. Prot. Bd.*, 154 F.3d 1313, 1316 (Fed. Cir. 1998). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Torres v. Dep't of Homeland Sec.*, 88 F.4th 1379, 1383 (Fed. Cir. 2023) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Under the substantial evidence standard of review, we do not reweigh evidence on appeal." *Jones v. Dep't of Health & Hum. Servs.*, 834 F.3d 1361, 1369 (Fed. Cir. 2016) (cleaned up).

## III

We begin by considering whether the MSPB erred in finding that Mr. Levinson neglected his duties, failed to follow three directives, and engaged in conduct unbecoming of an administrative law judge. Then, we turn briefly to the MSPB's determination that good cause existed for Mr. Levinson's removal.

A

On appeal, Mr. Levinson focuses on the neglect-of-duty charge. *See, e.g.*, Pet. Br. 3–6, 12–13. In particular, Mr. Levinson argues that the MSPB did not "cite or illustrate . . . one legally insufficient decision" written by him. Pet. Br. 12–13; *see also* Pet. Reply Br. 3–4, 13. We disagree. First, the MSPB identified several inadequate decisions, issued by Mr. Levinson while he was an administrative law judge, in its initial decision, albeit in its discussion of his failure to follow directives. *See* S.A. 57–58. The MSPB's final decision did not explicitly mention those identified decisions because Mr. Levinson did not dispute the neglect-of-duty charge or the related finding that "he failed to follow a directive when he continued to issue decisions that did not comply with the Macon HOCALJ's June 28, 2016 directive to issue legally sufficient decisions." S.A. 6; *see also* S.A. 5 & n.3. Further, the same conduct (issuing non-compliant decisions) was the basis for both his neglect-of-duty charge and his failure to follow directives charge. *Compare* S.A. 46–47 (discussing "Neglect of Duties" and making findings regarding "identified deficiencies in multiple areas of [Mr. Levinson's decisions]"), *with* S.A. 47 (discussing "Failure to Follow Directives" and finding "[o]n June 28, 2016, HOCALJ Uren issued a second directive requiring [Mr. Levinson] to demonstrate significant improvement by issuing policy compliant decisions and correcting errors identified in the focus quality review"). Therefore, the MSPB did cite legally insufficient decisions in connection with Mr. Levinson's neglect-of-duty charge. To the extent Mr. Levinson cites to contrary evidence in the record, we nonetheless are persuaded that substantial evidence supports the MSPB's finding on the neglect-of-duty charge.

Regarding the other charges, Mr. Levinson does not meaningfully dispute that he committed the acts he was charged with committing or even argue that no substantial evidence supports the MSPB's findings on each charge. Instead, his arguments on appeal are focused on the agency's

alleged wrongdoing, its attempts to silence him, or other incidents that were not the basis for his removal based on the MSPB's final decision. *See* Pet. Br. 6–12, 13–15; *see also* Pet. Br. 1–4, 13. But our review of the MSPB's decisions is limited by statute, and after reviewing the entire record, we conclude that the MSPB's findings that Mr. Levinson neglected his duties, failed to follow directives, and engaged in conduct unbecoming of an administrate law judge, are supported by substantial evidence.

B

Finally, we consider the MSPB's determination that the SSA established good cause for Mr. Levinson's removal.

Under 5 U.S.C. § 7521(a), "action may be taken against an administrative law judge . . . by the agency in which the administrative law judge is employed only for good cause established and determined by the [MSPB] on the record after opportunity for hearing before the Board." "We may overturn a penalty imposed by the [MSPB] for an [administrative law judge's] misconduct '[o]nly in the exceptional case in which the penalty exceeds that permitted by statute or regulation[] or is so harsh that it amounts to an abuse of discretion.'" *Long v. Social Sec. Admin.*, 635 F.3d 526, 538 (Fed. Cir. 2011) (quoting *Brennan v. Dep't of Health & Hum. Servs.*, 787 F.2d 1559, 1563 (Fed. Cir. 1986)) (first, second, and fourth alterations added).

In its final decision, the MSPB considered Mr. Levinson's largely successful work history with SSA and credited his feelings of mistreatment. *See* S.A. 22. Nonetheless, the MSPB concluded that "these factors do not outweigh those that support [Mr. Levinson's] removal, particularly the nature of the offenses and their impact on the [SSA], as well as [Mr. Levinson's] lack of rehabilitative potential." S.A. 22.

On appeal, Mr. Levinson does not challenge the MSPB's penalty determination. Mr. Levinson does,

however, request reinstatement and compensation. Pet. Br. 14–15; Pet. Reply Br. 13. Considering the record, we conclude that the MSPB thoroughly analyzed the relevant *Douglas* factors in concluding there was good cause for Mr. Levinson's removal and we affirm.

## IV

To the extent Mr. Levinson has made additional arguments, we have considered them and find them unpersuasive. The MSPB's findings on each charge are supported by substantial evidence and its decision authorizing Mr. Levinson's removal from his position as an administrative law judge is affirmed.

**AFFIRMED**

COSTS

No costs.